UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAPITOL RECORDS, INC., et al. )<br>        Plaintiffs, )<br> )<br>v. )<br> )<br>NOOR ALAUJAN, )<br>        Defendant. )<br> ) | | Civ. Act. No. 03-CV-11661-NG<br>(LEAD DOCKET NUMBER) |
| WARNER BROS. RECORDS, INC., et al. )<br>        Plaintiffs, )<br> )<br>v. )<br> )<br>RYAN HALLAHAN )<br>        Defendant. )<br> ) | | Civ. Act. No. 07-CV-10333-NG<br>(ORIGINAL DOCKET NUMBER) |

**PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND BRIEF IN SUPPORT**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiffs request an Order compelling Defendant to produce his computer hard drive for a forensic inspection that was requested under Rule 34(a). Specifically, Plaintiffs move that this Court order Defendant to make available any computer hard drive within his possession, custody or control so that a "mirror-image" may be created and inspected for relevant information by Plaintiffs' computer forensic expert. Plaintiffs have made a good faith effort to resolve this discovery matter before filing this motion, but Defendant has refused to produce this relevant and appropriate discovery. For the reasons stated below, Defendant's refusal is without merit, and this discovery should be compelled.

## INTRODUCTION

This action seeks redress for the infringement of Plaintiffs' copyrighted sound recordings pursuant to the Copyright Act.  Plaintiffs are recording companies that own or control exclusive rights to copyrights in sound recordings.  Since the early 1990s, Plaintiffs and other copyright holders have faced a massive and exponentially expanding problem of digital piracy over the Internet.  Today, copyright infringers use various online media distribution systems (so-called "peer-to-peer" or P2P networks) to unlawfully upload, download and distribute to others billions of perfect digital copies of Plaintiffs' copyrighted sound recordings from their computers.  As a result of the rise of peer-to-peer computer networks, Plaintiffs have sustained and continue to sustain devastating financial losses.  Losses from copyright infringement have also resulted in layoffs of thousands of employees in the music industry.

On October 5, 2005, investigators located an individual with the screen name "[UMASS]Silent" using the "i2Hub" file-sharing program to engage in copyright infringement on a massive scale.  This individual had ***1193 music files*** on his computer and was distributing them freely to the millions of people who use similar peer-to-peer networks.  In short, as an active user of a P2P network, this individual was downloading copyrighted sound recordings to his computer hard drive from other users of the P2P network, and was distributing the copyrighted sound recordings stored on his computer hard drive to other P2P users, all for free.

The investigators, a third party known as MediaSentry, determined that this individual used Internet protocol ("IP") address 128.119.142.235 to connect to the Internet.  After filing a "Doe" lawsuit against the individual using that IP address, Plaintiffs subpoenaed his Internet Service Provider ("ISP") to determine his identity.  The ISP - University of Massachusetts at Amherst - identified Defendant Ryan Hallahan as the individual in question.

Plaintiffs filed this lawsuit on February 20, 2007. Defendant answered the Complaint on March 22, 2007. On May 1, 2007, Plaintiffs served document requests which included requests for various electronic files available on Defendant's computer. (*See* Plaintiffs' Document Requests, attached as Ex. A.) Defendant responded on June 19, 2007 without producing a single document or electronic file, and objected on the ground that such requests are not provided for by the Federal Rules of Civil Procedure. (*See* Defendant's Responses, attached as Ex. B.). On July 5, 2007, Plaintiffs counsel requested that Defendant provide available dates for a computer forensic inspections. (*See* Plaintiffs' letter dated July, 5, 2007, attached as Ex. C). Defendant refused to provide available dates.

Still seeking these electronic files, on September 11, 2007, Plaintiffs' counsel requested that Defendant produce any computer within his possession, custody or control during the relevant timeframe for the purpose of a forensic computer examination by Plaintiffs' expert. (*See* Plaintiffs' letter dated September 11, 2007, attached as Ex. D.)[1] To date, Defendant has not responded to the letter.

Defendant admits using the P2P network I2Hub, but states that his roommate used it as well, and listened to similar music, and claims that Plaintiffs cannot prove that he is the party responsible for the copyright infringement at issue.

Pursuant to the Federal Rules, and for the reasons stated below, Plaintiffs are entitled to discover evidence directly relating to Plaintiffs' claims that may reside in the data on Defendant's computer hard drive. Accordingly, this Court should compel Defendant to make his computer available for a mirror-image copying and forensic inspection by Plaintiffs' expert.

---

[1] Plaintiffs seek inspection of any computer within Defendant's possession, custody or control during the relevant time period: April 5, 2005 to March 5, 2006.

## ARGUMENT

**1.    The Court should Order Defendant to make his computer available for a mirror-imaging because Plaintiffs are entitled to this discovery under the Federal Rules.**

Plaintiffs requested that Defendant make his computer hard drive available for a "mirror-image" copying in order to conduct a computer forensic inspection seeking further evidence of copyright infringement. Defendant refused this request. Because the data on Defendant's computer hard drive is relevant to the parties' claims and defenses, and the hard drive mirror-imaging is no broader than necessary and the most reliable method of inspection, Defendant should be compelled to produce his computer for copying and inspection pursuant to Rules 26(a)(1) and 34(a).

**(a)    Statement of the law.**

Rule 26(b)(1) provides, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action . . . ." FED. R. CIV. P. 26(a)(1). Additionally, Rule 34(a) permits any party to:

> Serve on any other party a request (1) to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents . . . or to inspect and copy, test, or sample any tangible thing which may constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served.

FED. R. CIV. P. 34 (a). Electronic files are equally as discoverable as traditional paper documents. *Simon Property Group, LP v. mySimon, Inc.,* 194 F.R.D. 639, 640 (S.D. Ind. 2000); *Playboy Ent. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999). Because data on Defendant's computer is discoverable under Rule 26(a)(1), and Defendant refused a valid request to "inspect and copy" a tangible thing (*i.e.*, his computer hard drive) pursuant to Rule 34(a), the

4

Court should compel Defendant to produce his computer for copying and inspection by Plaintiffs' certified forensic computer expert.

      **(b)**     **Data that is only available on Defendant's hard drive is relevant in this case where the acts are alleged to have occurred on his computer.**

Relevant and direct evidence of the violations at the heart of this matter may be found on Defendant's computer hard drive. Indeed, the focus in this case is on the activities that allegedly occurred on Defendant's computer. To engage in the alleged file-sharing via the Internet, recordings must be stored on a computer storage device, such as a hard drive. There is no more relevant information than the contents of the hard drive on the computer that Defendant would have connected to the Internet during the relevant times. For this reason, a copy of the data contained on Defendant's computer hard drive is discoverable under Rule 26(a)(1).

Likewise, other data that is created during Internet usage is relevant to claims and defenses in this case. These other electronic files contain records of online activity and are not normally available for view without the aid of a forensic expert's specialized tools. Plaintiffs are also entitled to discover this relevant data under Rule 26(a)(1).

Furthermore, a forensic examination of the hard drive is essential in the event that relevant files have been deleted or electronically concealed. Deleted files are not always truly deleted. *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 313 n. 19 (S.D.N.Y. 2003). Locating deleted files requires a search of the hard drive rather than the directory utilized by the operating system. *Id.* In the event that relevant files have been deleted, a forensic examination may be the only method of recovering remnants of those files which are subject to discovery. *Id.* Likewise, forensic examinations in other cases have revealed activity that may have been taken to conceal electronic evidence. *See Kucala Enters., Ltd. v. Auto Wax Co.,* 2003 WL 21230605; 2003 U.S.

Dist. LEXIS 8833 (N.D. Ill. May 23, 2003). To search for such relevant activity requires a forensic inspection of the entire hard drive or the entire mirror-image in question.

For these reason, the data on Defendant's computer is relevant to claims and defenses involved in this case and discoverable under Rule 26(a)(1). Accordingly, the Court should compel him to produce his computer hard drive for copying and inspection.

> **(c)  A mirror-imaging and inspection of an entire computer is necessary, and not over-broad, because relevant information may be located anywhere on Defendant's hard drive.**

Computer hard drives function with an operating system such that evidence may be found in various locations, depending on the computer's configuration and usage. *See* Declaration of Dr. Doug Jacobson, Ph.D., CFCE, attached as Ex. E ("Jacobson Declaration").[2] Many of these areas may not be readily viewable to the average user and therefore a computer forensic expert's involvement is necessary to locate all relevant and responsive material on a hard drive. *Id.* Computer hard drives are not like paper file cabinets. Inspecting a file cabinet reveals all paper documents kept inside. Unless the file cabinet is equipped with a hidden compartment, all documents are available to view and copy. As computers may be configured to save material in various locations on a hard drive and as users are able to save or move materials to various locations on a hard drive, it is impossible for Plaintiffs to specify in advance the locations where relevant data may be found on a hard drive in the possession of Defendant.

---

[2] "A hard drive is the primary means of data storage on a personal computer. Its surface is divided into concentric circles that are further divided into sectors. A group of sectors is called a cluster. A cluster is the minimum amount of space a file can occupy, regardless of the size of the file. The computer's operating system assigns a number to each cluster and keep track of which clusters a file occupies. Occupied clusters are called allocated. Clusters that are available for use (even if they contain data from previous files) are unallocated or free." *U.S. v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 45, n. 4 (D. Conn. 2002).

A computer hard drive stores its electronic files in a magnetic binary form that cannot be translated without the aid of electronic devices such as computers or special forensic tools. *See* Shira A. Scheindlin & Jeffrey Rabkin, *Electronic Discovery in Civil Litigation: Is Rule 34 Up to the Task*, 41 B.C. L. Rev. 327 (2000). The computer's operating system works with the hard drive to place electronic files in a binary format on various portions on the hard drive. *See* Jacobson Declaration. Not all parts of a file will be located in the same area of the hard drive or next to all the other parts of the file. *Id.* As a computer functions, the operating system and the hard drive locate data on various parts of the hard drive. Additionally, Internet activity leaves other electronic records on the hard drive of the computer that is being used to download and share files via the Internet. *Id.* A forensic expert utilizes specialized tools and methods to locate files stored in any location on a hard drive. *Id.* Because relevant information may be located anywhere on Defendant's hard drive, Plaintiffs should be permitted to make a mirror-image copy and conduct a forensic inspection of the entire computer hard drive.

> **(d)    The copying and inspection requested by Plaintiffs is the most reliable and least burdensome method of obtaining this discovery.**

Moreover, copying a hard drive using the industry-accepted method of mirror-imaging is the most reliable and accurate method of ensuring that the copy is an absolute duplicate in all ways of the data that is on the original hard drive. *Triumph Capital Group,* 211 F.R.D. at 48. Creating a mirror-image is routine and central to a computer investigation for forensic experts. *See id.* Mirror-imaging is the method utilized by law enforcement for investigating criminal matters involving computer hard drives.

The process of creating a mirror-image is straightforward. The forensic technician connects the original hard drive to a special device that is also connected to another hard drive that has previously been wiped clean so that no residual data exists. *See* Jacobson Declaration.

The mirror-imaging device then duplicates, sector by sector, exactly what is on the original drive and places it exactly the same on the mirror-image drive. *Id.* The duplication process creates a digital fingerprint, called a hash code signature ("hash code"), to verify that both drives are exactly identical in every way. *Id.* This hash code is recorded. If just one character changes on the hard drive, the hash code would be different. *Id.* By the use of this hash code, the mirror-image drive can be verified at any point to ensure it remains exactly the same as the original drive on the date of the mirror-image. *Id.*

A mirror-image may be created in just hours, depending on the size of the original hard drive. *See* Jacobson Declaration. The mirror-imaging process does not analyze any data, it makes a perfect copy of the original hard drive. *Id.* The original can then be returned and used by the owner, and the mirror-image can then be inspected for relevant and responsive data. *Id.*

The process of creating a mirror-image balances the need for Defendant not to be without his computer for an extended length of time, provides a perfect duplicate for inspection, and creates a method of verification that nothing on the mirror-image is altered at a later date. Copying and examining a mirror-image is not inexpensive. However, Plaintiffs are absorbing the cost of their discovery. All that Defendant needs to do is to make his computer available for a short time.

**2.     Plaintiffs agree that non-relevant material may be protected from disclosure through a stipulated protective order under Rule 26(c).**

Plaintiffs propose a protective order demonstrating that they are willing to agree to be bound not to disclose any non-relevant materials that may be found on Defendant's hard drive. (*See* Proposed Protective Order, attached as Ex. F.) The protective order contains the requisite terms and limitations and is a proper mechanism for permitting the discovery permitted under the Federal Rules of Civil Procedure and for protecting non-relevant material from disclosure. The

8

material provisions of the proposed protective order have been accepted by Courts and Defendants throughout the country. *See, e.g., Arista Records LLC et al. v. Tschirhart*, Case No. 5:05-CV-0372 (W.D. Tex. Jan. 25, 2006.); *Warner Bros. Records Inc. v. Does 1-4*, Case No. 4:07-CV-12825-PVG-VMM (E.D. Mich. Sept. 7, 2007). Because the proposed protective order will sufficiently protect Defendant's privacy interests in non-relevant data on his computer hard drive, the Court should compel him to produce his computer hard drive for copying and inspection.

## CONCLUSION

This is a case alleging copyright infringement on a computer connected to the Internet. Defendant admits using the I2Hub P2P network, but states that his roommate used it as well, and listened to similar music, and therefore Plaintiffs cannot prove that he is the party responsible for the copyright infringement at issue. Therefore, relevant evidence - indeed, critical evidence – may reside in the data on Defendant's computer hard drive. Accordingly, pursuant to the Federal Rules of Civil Procedure, Plaintiffs are entitled to inspect the computer and make a mirror-image of the hard drive. Plaintiffs may then utilize devices capable of translating and examining the mirror-image to ascertain relevant information, in whatever location and format, in which it exists.

For the foregoing reasons, Defendant should be compelled to make his computer available so that Plaintiffs may create a mirror-image of the hard drive for inspection and analysis. Further, the Court should enter Plaintiffs' proposed order, which prohibits disclosure of any non-relevant materials that may reside on the hard drive.

|  |  |
|---|---|
| Dated: February 21, 2008 | Respectfully submitted,<br><br>*/s/ Nancy M. Cremins*<br>John R. Bauer, BBO# 630742<br>Nancy M. Cremins, BBO # 658932<br>ROBINSON & COLE LLP<br>One Boston Place<br>Boston, MA  02108-4404<br>Main Phone:  (617) 557-5900<br>Main Fax:  (617) 557-5999<br><br>ATTORNEYS FOR PLAINTIFFS |

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed through the Court's CM/ECF system on February 21, 2008. In addition, a true and correct copy of the was sent by first class mail as follows:

Ryan Hallahan
91 Riverfield Rd.
Taunton, MA 02780

## CERTIFICATE OF COMPLIANCE WITH RULE 37.1(A)

I, Nancy M. Cremins, attorney for Plaintiffs in the above-captioned matter, hereby certify that on July 3, 2007 and on July 30, 2007, Plaintiffs' counsel conferred with Defendant regarding the subject of the within discovery motion and that we attempted in good faith to resolve or narrow the issues raised by the instant motion. Plaintiffs reserved on filing the instant motion until after the status conference related to this case occurred on January 29, 2008. Mr. Hallahan was supposed to be present at the status conference, but did not attend.

/s/ Nancy M. Cremins
Nancy M. Cremins