UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____ )
CAPITOL RECORDS, INC. et al., )
) Civ. Act. No. 03-cv-11661-NG
Plaintiffs, ) (LEAD DOCKET NUMBER)
)
v. )
)
NOOR ALAUJAN, )
)
Defendant. )
_____)


_____ )
SONY BMG MUSIC ENTERTAINMENT, et al. )
) Civ. Act. No. 07-cv-11446-NG
Plaintiffs, ) (ORIGINAL DOCKET NUMBER)
)
v. ) Oral Argument Requested
)
JOEL TENENBAUM )
)
Defendant. )
_____)


**MOTION AND MEMORANDUM TO ADMIT
THE INTERNET INTO THE COURTROOM**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 2

    **A.**    Courtroom View Network ................................................................... 2

    **B.**    Cameras in Courts .............................................................................. 3

    **C.**    Audio-Visual Coverage and Study in Massachusetts.......................... 4

    **D.**    The Experience with Cameras in Federal Courts.................................. 5

    **E.**    Federal Courts Allow Camera Access Under Local Rules, Despite Judicial Conference Policy ................................................................... 8

ARGUMENT ...................................................................................................................... 9

**I.**    THIS COURT SHOULD ADMIT THE INTERNET INTO THE COURTROOM AND PERMIT CVN TO PROVIDE COVERAGE OF THE PROCEEDINGS PURSUANT TO RULE 83.3 OF THE LOCAL RULES OF THIS COURT ................... 9

    **A.**    As a Matter of Law, Rule 83.3 Governs This Application. .................. 9

        **1.**    The Force of District Court Rules ......................................... 9

        **2.**    The Absence of Authority of the Judicial Conference to Modify or Abrogate District Court Local Rules ...................................... 11

    **B.**    As a Matter of Its Discretion Under Rule 83.3, This Court Should Grant the Instant Application. ......................................................... 13

CONCLUSION .................................................................................................................. 16

REQUEST FOR ORAL ARGUMENT ............................................................................. 17

RULE 7.1(a)(2) CERTIFICATE....................................................................................... 17

CERTIFICATE OF SERVICE ......................................................................................... 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Armster v. United States District Court*, 806 F.2d 1347 ................................................... 12

*In re Cargill, Inc.*, 66 F.3d 1256 ........................................................................... 12

*Craig v. Harney*, 331 U.S. 367 ............................................................................. 14

*Hamilton v. Accu-Tek*, 942 F.Supp. 136 ............................................................... 8

*Katzman v. Victoria's Secret Catalogue*, 923 F.Supp. 580 ......................................... 8, 16

*Levin v. Dalva Brothers, Inc.*, 459 F.3d 68 ................................................................ 10

*Marisol A. v. Giuliani*, 929 F.Supp. 660 ................................................................... 8

*Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 ...................................................... 15

*Richmond Newspapers v. Virginia*, 448 U.S. 555 ......................................................... 15

*Sigmon v. Parker Chapin Flattau & Klimpl*, 937 F.Supp. 335 ......................................... 8

*United States v. Mehrmanesh*, 652 F.2d 766 ............................................................... 12

*United States v. Merric*, 166 F.3d 406 ..................................................................... 12

*U.S. v. Cassiere*, 4 F.3d 1006 ............................................................................... 10

*Westmoreland v. Columbia Broadcasting System Inc.*, 752 F.2d 16 ................................. 15

### STATE CASES

*In re Petition of Post-Newsweek Stations*,
   370 So.2d 764 ........................................................................................... 14

### DOCKETED CASES

*American Bald Eagle v. Bhatti*, No. 1:91-cv-12209 ........................................................ 16

*American Equities Group, Inc. v. Ahava Dairy Products Corp.*,
   No. 01-cv-5207 (S.D.N.Y., Nov. 26, 2007)............................................... 8-9, 12

*CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC, et. al.*,
   No. 08-cv-05258 (S.D.N.Y. Aug 6, 2008) ................................................ 8

*GVA Market Neutral Master Limited v. Veras Capital Partners*,
No. 07-cv-00519 ............................................................................................. 8

*Miller v. Countrywide case,* No. 07-cv-11275-NG, Docket No. 49 ................................ 13

*The City of New York v. A-1 Jewelry & Pawn, Inc., et al.*, Case no. 06-cv-2233 ............. 9

*The Hearst Corp. v. Justices of the Superior Court*, No. SJ-96-0047 .............................. 4

*In re Zyprexa Products Liability Litigation*, Case no. 04-md-1596
(E.D.N.Y., March 4, 2008) ........................................................................ 12

**U.S. CODE PROVISIONS**

28 U.S.C. §132(c) ............................................................................................. 13

28 U.S.C. § 331...........................................................................................11, 12

28 U.S.C. § 372(c) ............................................................................................ 11

28 U.S.C. § 631(a) ............................................................................................ 13

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. Proc. 83(a)(1) .................................................................................. 13

**LOCAL CIVIL RULES**

D. Mass. L.R. 83.3 ................................................................................... Passim

N.D. Ill. L.R. 83.1 ........................................................................................... 10

E.D. Pa. Civ. R. 83.3 ........................................................................................ 10

Defendant moves to admit the Internet into the courtroom, pursuant to the general rules governing the admission of media in court proceedings.  More specifically defendant moves for leave of this Court pursuant to Local Civil Rule 83.3 to permit audio-visual coverage of the motion and trial proceedings in this case by Courtroom View Network (CVN).  This memorandum sets forth the basis for Defendant's application.  Defense counsel has met and conferred with opposing counsel, who have indicated that they will oppose this motion.

## INTRODUCTION

Local Civil Rule 83.3 permits proceedings to be recorded, photographed and broadcast "by order" of the Court.  As explained below, this Court should exercise the discretion granted to it under Rule 83.3 to admit the Internet to the courtroom, and issue an order authorizing CVN to provide audio visual coverage of the proceedings in this case over the Internet.

Though adversarial, the judicial process is essentially an exercise in civil discourse. Given the keen interest of the diverse parties following this litigation closely, and the potential learning value of this case to a broad audience beyond, this case presents an ideal instance in which judicial discretion should be exercised under the auspices of the rule to admit Internet to the courtroom.

Rule 83.3 of this Court not only empowers this Court to admit the internet into the Courtroom, but there are overwhelming reasons of public policy and public interest that argue in favor of granting this motion.  Information is the currency of democracy, sunshine laws open government. The federal court is open not only as a court of justice but a forum of civic education. WE the PEOPLE are the ultimate check in our constitutional system of checks and balances, we the people of the integrated media space opened and connected by the net in a public domain. Net access will allow an intelligent public domain to shape itself by attending and engaging in a public

1

trial of issues conflicting our society.

Net access to this litigation will allow an interested and growingly sophisticated public to understand the RIAA's education campaign. Surely education is the purpose of the Digital Deterrence Act of 1999, the constitutionality of which we are challenging. How can RIAA object? Yet they do, fear of sunlight shone upon them.

Net access will allow demonstration by the parties to the jury of the nature and context of the copyright infringement with which Joel Tenenbaum is charged.

Net access will allow an intelligent public domain to shape itself by attending and engaging a public trial prosecuted by a dying CD industry against a defendant who did what comes naturally to digital kids.

Net access will allow educational and public media institutions to build a digital archive and resource for understanding law akin to Jonathan Harr's *A Civil Action* reconceived in execution for legal pedagogy in a digital age, *Another Civil Action*. The immediacy of net-based access to court opinions already allows lawyers, professors, students, and reporters to better keep abreast of the most recent legal developments, but none with the immediacy the Net allows.

## STATEMENT OF FACTS

### A.    Courtroom View Network

CVN is a newsgathering division of Courtroom Connect.  (See Declaration of John Shin ("Shin Decl.") ¶ 3.)  CVN provides audio-visual coverage of proceedings via the placement of silent cameras (which require no lighting other than existing courthouse lighting).  (*Id.*)  CVN plans to record the proceedings and webcast live over a connection to the Internet, and serve as the pool camera provider for any news gathering entity.

CVN has covered a broad range of trials and other judicial proceedings, including some of the most prominent civil litigation in the United States. (*Id.* at ¶ 4.) CVN also records hearings, arguments and motion practice from various courtrooms around the country. (*Id.*) CVN has covered over 200 proceedings, and provides its coverage in accordance with any and all rules imposed by the court. (*Id.*) There are no reporters or commentators, but rather only the proceedings in court, and links to the exhibits and other sources. (Attached as Exhibit 1 to the Shin Declaration are graphics showing various aspects of CVN's coverage.) CVN has never had a judge terminate its coverage or remove any of its personnel from the courtroom because of concerns that the presence of the camera or CVN's personnel interfered with the conduct of the proceeding. (*Id.* at ¶ 5.)

**B.     Cameras in Courts**

Over the last half century, cameras have become a fixture in the courtrooms of nearly all states, including the trial courts of 43 of them. During that period, numerous studies have been conducted by those jurisdictions (as well as by the federal courts) to evaluate the effect on the judicial process of the presence of cameras in courtrooms. The results have been consistent and unambiguous:  electronic coverage of trial court proceedings—whether an oral argument or a jury trial—does not impede the fair administration of justice, compromise dignity of the court, or impair the orderly conduct of proceedings.

Many of these jurisdictions have issued studies formally reporting their findings (California issued two.[1]) In this memorandum, we discuss two:  those in Massachusetts and in the

---

[1]      An experiment in 1980 and 1981, summarized and evaluated in a several-hundred-page report prepared by an independent consulting firm, led to the enactment of a permanent rule permitting cameras at trials. More than a decade later—three weeks after the O.J. Simpson criminal trial concluded—the Chief Judge of the California Supreme Court appointed a task force to evaluate whether to continue to permit cameras in courts. The task force recommended in 1996 that cameras should continue to be

federal courts.

### C.    Audio-Visual Coverage and Study in Massachusetts

Massachusetts first allowed electronic coverage of jury trials and appellate proceedings in 1980 "for the specific purpose of assessing and analyzing the effects of such coverage." (See Declaration of Charles Nesson ("Nesson Decl.") Ex. 2, at Attachment #2, at 1)  During that period, the media provided coverage of 69 cases, with most of these cases being criminal trials. (*Id.* at "Report on the Experiment," at 1, 4)

The results of the experiment were favorable.  In July 1982, the committee overseeing the experiment issued a report "recommend[ing] . . . a continued media presence in the courtrooms." (*Id.* at "General Conclusions," at 1)  The committee stated that "the presence of the electronic and photographic media in the courtroom during the past two years has been without any serious adverse incident."  (*Id.*)  The committee further noted that the media had "opened up proceedings to a much broader public audience . . . giv[ing] the public an enhanced awareness of the skill and dignity with which justice is administered."  (*Id.*)  Accordingly, the committee recommended that the rules governing the Massachusetts courts be amended to allow for electronic coverage of court proceedings open to the public.  (*Id.* at "Recommendation," at 1)  The Supreme Judicial Court followed the committee's recommendation, approving a rule allowing cameras in state court proceedings.  *See* Massachusetts Supreme Judicial Court, Rule 1:19 (previously codified at Rule 3:09, Canon 3(A)(7)).  That rule remains in effect to this day.  *See generally The Hearst Corp. v. Justices of the Superior Court*, No. SJ-96-0047 (Mass. Feb. 1, 1996) ("The circumstances of *People v. Simpson* in California should not be permitted to influence the operation of our Massachusetts rule.") (Nesson Decl. Ex. 3).

---

permitted in California's courts, deciding that the Simpson trial could not outweigh years of positive experience with cameras.  (*See* Nesson Decl. Ex. 1)

### D.    The Experience with Cameras in Federal Courts

Although they entered the process relatively late in the game—at a time when over 40 states permitted cameras in court proceedings, and after dozens of studies had been conducted—the federal courts, too, successfully experimented with cameras in trial court proceedings.

Until 1990, the federal judiciary had adhered to Canon 3A(7) of the Code of Judicial Conduct, which stated that "[a] judge should prohibit broadcasting, televising, recording, or taking photographs in the courtroom" except for purposes of preserving evidence and to record and broadcast investitive, ceremonial or naturalization proceedings.  (Nesson Decl. Ex. 6, at 2; *see also* Ex. 5, at 103-04).  In 1990, however, the Judicial Conference adopted the recommend-ation of its Ad Hoc Committee on Cameras in the Courtroom (the "Ad Hoc Committee") to strike Canon 3A(7) from the Code of Judicial Conduct.  (Nesson Decl., Ex. 5, *see also* Ex. 4)   In issuing its recommendation, the Ad Hoc Committee had been influenced not only by the experience of the many state studies, but by former Congressman Robert W. Kastenmeier, the longtime Chair of the House Judiciary subcommittee overseeing federal courts.  Representative Kastenmeier emphasized the need to provide the public with a "better understanding of the federal courts," and urged that "the time has come for the Federal Judicial branch to allow cameras in the courtroom" and that the "need" existed to "permit radio and television coverage of the Federal courts at work."  (Nesson Decl., Ex. 6, at Appendix A)

At the same time that it struck Canon 3A(7), the Judicial Conference adopted a "Policy Statement."[2] (Nesson Decl., Ex. 6)  Although the Policy Statement constituted an expansion of

---

[2]    The policy statement reads, in pertinent part:

A judge may authorize broadcasting, televising, recording, or taking photographs in the courtroom and in adjacent areas during investitive, naturalization or other ceremonial proceedings.  A judge may authorize such activities in the courtroom or adjacent areas during other proceedings, or recesses between such other proceedings, only:
(a)  for the presentation of evidence,

camera access beyond the confines of Canon 3A(7), the Conference did not "authorize the contemporaneous broadcasting of proceedings from the courtroom to the public beyond the courthouse walls" other than in ceremonial proceedings or under a Judicial Conference-approved pilot program.  (*Id.*)

At the same time, however, the Conference instituted a "Pilot Program on Photographing, Recording, and Broadcasting in the Courtroom" ("Pilot Program")—what the Ad Hoc Committee referred to as "controlled experimentation on a voluntary basis."  (Nesson Decl. Ex. 5, at 104) It did this in part because of the success of states' experiments, the abolition by the ABA of any rule barring cameras and the recommendation of Congressman Kastenmeier.  The Committee on Court Administration and Case Management (the "Case Management Committee") was assigned the task of overseeing the Pilot Program and the Judicial Conference authorized the Federal Judicial Center ("FJC") to "monitor and evaluate the pilot."  (*Id.*)  The Pilot Program authorized coverage of cases in six federal district courts (including in this Court) and two federal courts of appeal.  (Nesson Decl. Ex. 7)

The Pilot Program remained in effect until December 31, 1994, and cameras were allowed in over 50 trials and various other proceedings.[3]  (*Id.* at 5)  The Pilot Program was a

---

(b)  for the perpetuation of the record of the proceedings,
(c)  for security purposes,
(d)  for other purposes of judicial administration; or
(e)  in accordance with pilot programs approved by the Judicial Conference of the United States.

(Nesson Decl. Ex. 6, at Appendix B)

[3] Among the cases covered in this Court were the following:

• *Foster v. McGrail*, 1:91-cv-13282 (Keeton, J.): Action by inmate alleging two guards violated his civil rights by assaulting him.
• *American Bald Eagle v. Bhatti*, No. 1:91-cv-12209 (Zobel, J.): Action brought by two animal rights organizations against a State agency under the Federal Endangered Species Act to prevent deer hunting that allegedly threatened the bald eagle.
• *Williams v. Cambridge*, 1:89-cv-00436 (Mazzone, J.): Civil rights action by plaintiff who claimed to have been wrongfully identified in a fight.

success.  Its results were consistent with those from every other jurisdiction that had monitored

the effects of cameras on court proceedings.  The FJC's study of the Pilot Program (the "Federal

Study") revealed an overwhelmingly positive impact as a result of the presence of cameras.

(Nesson Decl. Ex. 7, at 7)  Based upon judge and attorney evaluations submitted in connection

with the Pilot Program and on interviews with participants, the Federal Study concluded, among

other things:

- "Overall, attitudes of judges toward electronic media coverage of civil proceedings were initially neutral and became more favorable after experience under the pilot program."  (*Id.*)

- "Judges and attorneys who had experience with electronic media coverage under the program generally reported observing small or no effects of camera presence on participants in the proceedings, courtroom decorum, or the administration of justice."  (*Id.*)

- "Judges, media representatives, and court staff found the guidelines governing the program to be generally workable" and "judges and staff report[ed] that members of the media were very cooperative and complied with the program guidelines and any other restrictions imposed."  (*Id.*)

Based upon the findings of the Federal Study, the Case Management Committee—the

committee charged by the Conference with overseeing the Pilot Program—submitted to the

Conference a report and recommendation that camera coverage of civil proceedings, both trial

and appellate, be made permanent and be extended to all federal courts.  (Nesson Decl. Ex. 8)

On September 20, 1994, however, the majority of the Judicial Conference "declined to

approve" the recommendation and "[n]o action was taken with regard to the ongoing pilot pro-

gram," which subsequently expired.  (Nesson Decl. Ex. 9, at 47)  The Judicial Conference

explained its action by noting only that a "majority of the conference concluded that the intimi-

dating effect of cameras on some witnesses and jurors was cause for concern."  (*Id.*)  Two days

later, L. Ralph Mecham, the Director of the Administrative Office of the United States Courts,

---

• *DeMary v. Yamaha Motor Corp.*, 3:88-cv-00195 (1991) (Freedman, J.): Product liability trial alleging negligent design of all-terrain vehicle.

sent a memorandum to all federal judges in which he also asserted concerns of the Judicial Con-

ference about the content of out-of-court reporting.  According to him, the Judicial Conference

disapproved of the fact "that most broadcast coverage was not gavel-to-gavel and 'conveyed lit-

tle verbal information to viewers about the legal process.'"  (Nesson Decl. Ex. 10)

### E.    Federal Courts Allow Camera Access Under Local Rules, Despite Judicial Conference Policy

Nothing in the Judicial Conference's initial resolution or the later letter of Mr. Mecham

referred to the existence of local court rules, such as Rule 83.3, that permitted cameras in their

courtrooms and coverage of proceedings upon issuance of a court order.  And, so, in early 1996,

Courtroom Television Network applied pursuant to General Rule 7 (now Local Civil Rule 1.8) of

the Southern District of New York, to cover an oral argument on a motion in a large class action

involving a challenge to New York City's child welfare system.  *See Marisol A. v. Giuliani,* 929

F. Supp. 660 (S.D.N.Y. 1996).  The Court (per the late Judge Robert J. Ward) granted the appli-

cation:  "the policy of the [Judicial] Conference does not overrule or supplant the Local Rules

adopted by the Board of Judges of this District Court," but instead "empowers the Court to grant

written permission to televise a civil proceeding."  *Id.* at 661.

Since that decision, other judges in both the Southern and Eastern Districts of New York

granted similar applications by Court TV, some of which sought to provide coverage of witness

testimony.[4]  In the last year, CVN has begun to obtain access to proceedings, as well.[5]

---

[4]    *See Sigmon v. Parker Chapin Flattau & Klimpl,* 937 F. Supp. 335 (S.D.N.Y. 1996) (Leisure, J.) (permitting coverage of trial in discrimination case); *Katzman v. Victoria's Secret Catalogue,* 923 F. Supp. 580 (S.D.N.Y. 1996) (Sweet, J.) (permitting coverage of oral argument on motions in consumer fraud case); *Hamilton v. Accu-Tek,* 942 F. Supp. 136 (E.D.N.Y. 1996) (Weinstein, J.) (permitting coverage of oral argument on motion in case involving liability for manufacture of firearms).

[5]    *See CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC, et. al.,* No. 08-cv-05258 (S.D.N.Y. Aug 6, 2008) (Rakoff, J.) (Nesson Decl., Ex. 13) (granting permission to cover oral argument); *GVA Market Neutral Master Limited v. Veras Capital Partners*, No. 07-cv-00519 (S.D.N.Y.) (Sweet, J.) (Nesson Decl. Ex. 14; oral argument); *American Equities Group, Inc. v. Ahava Dairy Products*

The Judicial Conference responded to Judge Ward's decision in *Marisol* by approving, in

March 1996, a resolution "to strongly urge each circuit judicial council to adopt" Conference

policy banning cameras, and to "abrogate any rules of court" that conflict with that policy.

(Nesson Decl. Ex. 12)  To our knowledge, no circuit judicial council has done so.

## ARGUMENT

I.    **THIS COURT SHOULD ADMIT THE INTERNET INTO THE COURTROOM
      AND PERMIT CVN TO PROVIDE COVERAGE OF THE PROCEEDINGS
      PURSUANT TO RULE 83.3 OF THE LOCAL RULES OF THIS COURT**

This Court should issue such an order pursuant to Rule 83.3 permitting CVN to provide

audio-visual coverage over the internet of the proceedings in this case.

   A.    **As a Matter of Law, Rule 83.3 Governs This Application.**

       1.    **The Force of District Court Rules**

Congress has determined that "all courts established by Act of Congress may from time

to time prescribe rules for the conduct of their business."  28 U.S.C. § 2071(a).  Pursuant thereto,

the Federal Rules of Civil Procedure provide:

> Each district court, acting by a majority of its district judges, may, after giving
> appropriate public notice and an opportunity for comment, make and amend rules
> governing its practice. . . .  A local rule takes effect on the date specified by the
> district court and remains in effect unless amended by the court or abrogated by
> the judicial council of the circuit.

Fed. R. Civ. P. 83(a)(1).  Only one rule of this Court speaks to the question of whether cameras

may be permitted into courtrooms in this District:  Rule 83.3.  Entitled "Photographing, Record-

ing and Broadcasting," Rule 83.3 provides, in relevant part:

---

*Corp.*, No. 01-cv-5207 (S.D.N.Y.) (Sweet, J.) (Nesson Decl. Ex. 15, at Docket #131; bench trial; case
settled on the day of the trial); *In re Zyprexa Products Liability Litigation*, Case no. 04-md-1596
(E.D.N.Y.) (Weinstein, J.) (Nesson Decl. Exs. 16-21; multiple proceedings, including hearings on
motions to dismiss and for summary judgment, and evidentiary hearing on motion for class certification);
*The City of New York v. A-1 Jewelry & Pawn, Inc., et al.*, Case no. 06-cv-2233 (E.D.N.Y.) (Weinstein, J.)
(Nesson Decl. Ex. 22; jury trial which did not take place).

> Except as specifically provided in these rules or by order of the court, no person shall take any photograph, make any recording, or make any broadcast by radio, television, or other means, in the course of or in connection with any proceedings in this court, on any floor of any building on which proceedings of this court are or, in the regular course of business of the court, may be held.

Local Civ. R. 83.3(a).

Rule 83.3 is the only rule of court currently in existence that addresses whether cameras may be permitted into District of Massachusetts courtrooms in civil proceedings.  Unlike the criminal context, *see* Fed. R. Crim. P. 53, the Federal Rules of Civil Procedure do not address the issue.  As far as we are aware, there has been no action by a "majority of [the] district judges" of this Court or the judicial council of the First Circuit to modify or abrogate Rule 83.3 since it was enacted.

Rule 83.3(a) creates two categories of exceptions to the general prohibition against broadcasts and recordings:  *(i)* those activities specifically provided for in the local rules, such as the exceptions enumerated in section 83.3(b) – 83.3(d) that the Court "may permit"; and *(ii)* broadcasts, recordings and photographs authorized by an "order of the court." The scope of the second exception is broad—the text of Rule 83.3 does not impose any limitations or conditions on a court's discretion to permit broadcasts "by order," which is consistent with the broad authority generally granted to district judges to manage their own proceedings.[6]  *See Levin v. Dalva Brothers, Inc.*, 459 F.3d 68, 72 (1st Cir. 2006) ("decisions regarding the management of trial calendar and courtroom proceedings are particularly within the province of the trial judge"); *U.S. v. Cassiere*, 4 F.3d 1006, 1018 (1st Cir. 1993) (noting district court's "broad discretion" to

---

[6]      Rule 83.3 is broad indeed, compared to other local rules that either distinguish between types of proceedings, *see, e.g.*, E.D. Pa. Civ. R. 83.3 ("investitive, naturalization or other ceremonial proceedings" may be "broadcast" or "filmed"), or absolutely prohibit audio visual coverage, *see, e.g.*, N.D. Ill. L. R. 83.1 ("The taking of photographs, radio and television broadcasting or taping in the court environs . . . is prohibited.").

control trial proceedings).

### 2.     The Absence of Authority of the Judicial Conference to Modify or Abrogate District Court Local Rules

The Judicial Conference is a creature of federal statute, and Congress could hardly have

been clearer as to its function, as well as to its rule-making authority.  Section 331 of the Judicial

Code provides that "the Chief Justice of the United States shall summon annually" the members

of the Conference.  28 U.S.C. § 331.  The Conference, so convened, "shall make a compre-

hensive survey of the condition of business in the courts of the United States and prepare plans

for assignment of judges to or from circuits or districts where necessary."  *Id*.[7]

The Conference's authority to take legal action and make binding rules is clear, specific,

and narrow.  First, the Conference, either by itself or through a standing committee, "is author-

ized to exercise the authority provided in section 372(c) of [the Judiciary Code]."  28 U.S.C. §

331.  Section 372(c), in turn, sets forth the procedures for disciplining judges about whom the

public has complained.  28 U.S.C. § 372(c).  Second, the Conference is authorized to "prescribe

and modify rules for the exercise of the authority provided in Section 372(c)."  28 U.S.C. § 331.

Third, the Conference "shall review rules prescribed under section 2071 of this title by the

courts, *other than* the Supreme Court and *the district courts*, for consistency with Federal law.

The Judicial Conference may modify or abrogate any such rule so reviewed found inconsistent in

the course of such a review.  28 U.S.C. § 331.

Section 331 explicitly declines to accord the Judicial Conference the power to make

changes to or to overrule any district court rule, including Rule 83.3; indeed, Congress explicitly

---

[7]     The Conference "shall also submit suggestions and recommendations to the various courts to promote uniformity and management procedures and the expeditious conduct of court business."  *Id*.  The Conference is also obligated to carry on a continuous study of the "operation and effect of the general rules of practice and procedure" as prescribed by the United States Supreme Court for other courts, and to recommend to that Court any such changes it "may deem desirable."  *Id*.

has barred it from doing so.  The Conference is empowered only to "modify or abrogate rules" *other* than those of any district court.[8]  Otherwise, the Conference has persuasive—but not binding—authority.  *See, e.g., United States v. Merric*, 166 F.3d 406, 412 (1st Cir. 1999) (noting that "the views of the Judicial Conference are entitled to respectful attention," but are binding only on a few matters); *In re Cargill, Inc.*, 66 F.3d 1256, 1267 (1st Cir. 1995) (stating that the Judicial Conference does not "hold a specific statutory grant of authority to enact binding ethical rules," and that its actions have only "persuasive weight").[9]  It is precisely on this basis that the federal courts in New York have permitted (and continue to permit) cameras into their courtrooms.  *See, e.g., In re Zyprexa Products Liability Litigation*, Case no. 04-md-1596 (E.D.N.Y., March 4, 2008) (Weinstein, J.) (allowing CVN to cover various proceedings, and noting that "[t]he position of the Judicial Conference opposing televised district court proceed-ings . . . does not bind federal district courts") (Nesson Decl. Ex. 16); *American Equities Group, Inc. v. Ahava Dairy Products Corp.*, No. 01-cv-5207 (S.D.N.Y., Nov. 26, 2007) (Sweet, J.) (allowing CVN to cover bench trial, though case settled on day of trial) (Nesson Decl. Ex. 15, Docket #131).

Rule 83.3 alone governs this application.  The Judicial Conference is empowered only to make "suggestions and recommendations."  28 U.S.C. § 331.  As we demonstrate below, those that exist regarding televised proceedings should not control here.

---

[8]    Indeed, in 1985, Congress considered granting rule making authority over district courts to the Judicial Conference, but rejected the idea.  *See* H.R. Rep. No. 422, 99th Cong., 1st Sess. 20 (1985).

[9]    *Accord, Armster v. United States District Court*, 806 F.2d 1347, 1349 n.1 (9th Cir. 1986) ("Except for judicial disciplinary proceedings, the Judicial Conference does not have binding or adjudicatory authority over the [district] courts."); *United States v. Mehrmanesh*, 652 F.2d 766, 775 n.6 (9th Cir. 1981) ("[The trial judge] apparently regarded the Judicial Conference's position as a binding interpretation. This of course is incorrect and provides additional grounds for not deferring to the trial judge's interpretation.").

**B.      As a Matter of Its Discretion Under Rule 83.3, This Court Should Grant the Instant Application.**

We first address an issue raised in this Court's July 8, 2008 order in the *Miller v. Countrywide* case, No. 07-cv-11275-NG, Docket No. 49, regarding whether Rule 83.3 empowers individual judges to admit the internet, or whether Rule 83.3 requires a collective decision by all members (or the entirety of) this Court.  (Nesson Decl. Ex. 24, July 8, 2008 Electronic Order.) Rule 83.3 does not mandate collective decision making.  It should not be disputable that the phrase "by order of the court," as used in the Rule as in so many similar rules and statutes, empowers individual judges to order broadcasting (or narrowcasting) in specific cases, and does not require an order from all, or even a majority of the court.  This Court issues orders through *any* of its judges, including a single judge.  28 U.S.C. § 132(c) ("[T]he judicial power of a district court with respect to any action, suit or proceeding may be exercised by a single judge. . .").  If Rule 83.3 were intended to require a collective decision, it could easily have said so. *Compare, e.g.,* Fed. R. Civ. Proc. 83(a)(1) ("[A] district court, *acting by a majority of its district judges*, may adopt and amend rules governing its practice.") (emphasis added); 28 U.S.C. § 631(a) (appointment or reappointment of a magistrate judge requires the concurrence of "a *majority of all judges* of such district court") (emphasis added).  Moreover, reading the phrase "order of the court" to require a collective decision of the judges would also be inconsistent with the existence of Rule 83.3 in the first place.  Pursuant to Federal Rule of Civil Procedure 83(a)(1), a majority of judges in the Massachusetts District Court by definition have already decided as a general matter to permit "the court" to authorize the use of cameras in their courtrooms (by issuance of "an order").  This is the language routinely used to permit individual members of the Court to issue orders.  In the absence of language saying so, it would make no

sense to read the rule as promulgated at a general level if the application of that rule to a specific case required a second level collective decision by a majority of judges.

The concerns of the Judicial Conference also do not justify denial of our motion.  The Judicial Conference voted against continued audio-visual coverage of federal civil proceedings, in part, because of its concerns about the possible "intimidating effect of cameras on some witnesses and jurors."  First, there will be no witnesses or jurors at the January 22 oral argument—the proceeding will be very much like an appellate argument—with attorneys and the Court the lone participants.  *See, e.g.*, Roger J. Miner, "Keeping An Eye On Justice," 67 *N.Y.S. B.J.* 8, 14 (Feb. 1995).  In fact, the Massachusetts Supreme Judicial Court, in conjunction with Suffolk University Law School, makes available on the Internet webcasts of the oral arguments held before it each day.  *See* www.suffolk.edu/sjc.

Nor should permission be denied because of the other concerns expressed by the Conference in 1994—the way the footage of the proceedings may be used out-of-court by some members of the media.  (Nesson Decl. Ex. 10)  As we note above, Mr. Mecham of the Administrative Office of the United States Courts informed all federal judges two days after the Conference voted against the recommendations of the Case Management Committee to make cameras permanent that Conference members had expressed concern that "coverage was not gavel-to-gavel."  (*Id.*)  All proceedings in this case will be narrowcast gavel-to-gavel in their entirety on the Internet at CVN's secure website.

Moreover, any coverage of the eventual trial in this action should raise no serious objection.  The trial proceedings will be open to the public and will be a matter of public record, and in this sense they will be "seen" by whoever chooses to watch or learn about them.  It is common ground that trials are "public event[s]," *Craig v. Harney*, 331 U.S. 367, 374 (1947), and

may not be closed to the public without violating the First Amendment absent the most

compelling and narrowly tailored, articulated reasons.  *See Richmond Newspapers v. Virginia*,

448 U.S. 555 (1980) (holding that the public has a right of access to criminal proceedings);

*Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (holding that the public

has a right of access to civil proceedings); *Westmoreland v. Columbia Broadcasting System Inc.*,

752 F.2d 16, 22-23 (2d Cir. 1984) (noting that civil trials are public under *Richmond*

*Newspapers*).  So far as we know, there has been no request to close this trial.  (CVN in any

event will not cover non-public portions of the trial.)[10]

There is, as well, a large body of evidence that in-court cameras do not adversely affect

the administration of justice, or the behavior of trial participants, and do not compromise the

rights of witnesses or parties.  For example, during the 1991-1994 Pilot Program permitting

cameras to cover civil trials in various federal district courts (including this Court), over 50 trials

were televised and we are aware of no judgments overturned because of the fact the trial was

televised (or the publicity occasioned by the trial).[11]  Similarly, the State of New York permitted

cameras in court for just under a decade, between 1987 and 1997, and permitted approximately

1,700 trials (both criminal and civil) to be televised during that period.  Again, no verdict or

judgment was overturned or vacated on the ground that the camera had caused any specific

prejudice.[12]  The data adduced during New York's experience demonstrated that citizens showed

---

[10]     While there is no reason, as a general matter, to prohibit coverage of a trial, we recognize that there could be concerns with specific witnesses or testimony.  To the degree that such concerns arise as trial approaches and the parties develop their witness lists, we would ask for an opportunity to address these specific concerns at that time.

[11]     Nesson Decl., Ex. 7. (reporting that the Federal Pilot Program found "little or no effect of camera presence on participants in the proceedings, courtroom décorum, or the administration of justice.").

[12]     A committee chaired by Dean John Feerick that reviewed the decade's worth of New York's experience made the following conclusions: (a) research has revealed no appellate decision "overturning a judgment, verdict, or conviction based on the presence of cameras at trial"; (b) "[o]ur review . . . did not

nearly as much apprehension about coverage by newspaper reporters of a trial than of a camera

in the courtroom.[13]

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion

to admit the internet into the courtroom.

Dated:  December 23, 2008.

Respectfully submitted,

    /s/ Charles Nesson
Charles R. Nesson
1575 Massachusetts Avenue
Cambridge, MA  02138
E-mail: nesson@law.harvard.edu
Telephone:  (617) 495-4609

ATTORNEY FOR DEFENDANT

---

find that the presence of cameras in New York interferes with the fair administration of justice"; (c) "[t]he record . . . does not show that the fears regarding the impact of cameras on trial participants have been realized"; and (d) "witness intimidation is neither borne out by the record . . . nor sufficiently strong to warrant barring cameras from the courtroom." *See* New York State Committee to Review Audio Visual Coverage of Court Proceedings, *An Open Courtroom: Cameras in New York Courts, 1995-1997*, April 4, 1997 (Nesson Decl., Ex. 23), at 1, 68, 71, 73.  In the same vein, a task force appointed by the California Supreme Court to evaluate whether cameras should continue to be permitted in California's courts after the O.J. Simpson trial decided that the Simpson trial could not outweigh years of positive experience with cameras, and decided that cameras could remain in the state's courtrooms.  (*See* Nesson Decl., Ex. 1). The conclusions of the studies undertaken by these two states are not unique.  *See, e.g., In re Petition of Post-Newsweek Station*s, 370 So. 2d 764 (1979) (describing results of Florida experiment with cameras in courtrooms, which found that fears of witness intimidation, lawyer grandstanding, or general distraction to be "unsupported by any evidence"); *see generally Katzman*, 923 F. Supp. at 585 ("During the last thirty years, studies conducted by state and federal jurisdictions to evaluate the effect on the judicial process of the presence of cameras in courtrooms have demonstrated that televised coverage of trial court proceedings does not impede the fair administration of justice, does not compromise the dignity of the court, and does not impair the orderly conduct of proceedings.").  These and the many other state studies concluding that cameras do not interfere with the administration of justice or harm parties' or witnesses' rights are available on request.

[13]      *See* Nesson Decl., Ex. 23 at Appendix B.

## REQUEST FOR ORAL ARGUMENT

In accordance with Rule 7.1(d) of the Local Rules of this Court, Counsel for Defendant requests oral argument at a date and time to be set by this Court.

## RULE 7.1(A)(2) CERTIFICATE

I hereby certify that counsel for the Defendant met and conferred with counsel for the Plaintiffs on the matters set forth herein in a good faith effort to resolve or narrow the issues presented in this motion prior to filing.  Counsel for Plaintiff indicated that they would oppose the motion.

_____/s/ Charles Nesson_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2008, I caused to be served the foregoing motion and supporting documents on all parties, using the Court's Electronic Case Filing System.


    /s/ Charles Nesson
Charles R. Nesson
1575 Massachusetts Avenue
Cambridge, MA  02138
E-mail: nesson@law.harvard.edu
Telephone:  (617) 495-4609

ATTORNEY FOR DEFENDANT