```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS


_____
                                   )
CAPITOL RECORDS, INC., et al.,     )
                                   )
          Plaintiffs,              )  Civ. Act. No.
                                   )  03-CV-11661-NG
v.                                 )  (LEAD DOCKET NUMBER)
                                   )
NOOR ALAUJAN,                      )
                                   )
          Defendant.               )
_____)


_____
                                   )
SONY BMG MUSIC ENTERTAINMENT, et al.,)
                                   )
          Plaintiffs,              )  Civ. Act. No.
                                   )  07-CV-11446-NG
v.                                 )  (ORIGINAL DOCKET NUMBER)
                                   )
JOEL TENENBAUM,                    )
                                   )
          Defendant.               )
_____)
```

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER OF JULY 14, 2009**

Joel Tenenbaum is charged with downloading and sharing copyrighted works unfairly. He counters that his actions constituted fair use.

Will the issue of fairness at the core of Joel Tenenbaum's case be decided by a judge as a matter of summary justice or will it be heard and decided by a jury of his peers?

There are those who saw, and still see in internet a society of sharing, a new mode of relating -- a commonwealth to be built by peers through connection.

Joel represents the digital generation and its views. He personifies millions upon millions of our sons and daughters born into the networked world. In high-school, he did the things that school kids do, worked at MacDonalds to earn money for a speaker for his car, bought CDs, downloaded and shared songs p2p with Napster and KazaA, shared and discussed songs with friends, face to face and online. See Second Deposition of Joel Tenenbaum of July 8, 2009, hereinafter "JT Depo. II", at 28:21-22 (Doc. No. 875-3 at 31). He is a digital native.

Now, as a result, he is hit by a federal lawsuit that threatens to bankrupt him and his family. The issue of fairness that is raised by this case is a novel one, arising out of the new digital era. The Plaintiffs prosecute Joel Tenenbaum premised on the theory that Congress made it unlawful for kids enjoy bits they find for free in cyberspace.

Joel counters this prosecution is not fair to him or to his generation. He asserts that the copyright statute did not envision free and open space of cyberspace. Any assumption that Congress deliberated and decided the fairness issue in this new cyber context is fallacious. But Congress did recognize back in 1976 that fairness must be applied to the bounds of its grant of

copyright, and application of that principle in context must evolve with the times.

**I. The Fairness Issue Must be Decided by a Jury**

a. Plaintiffs are claiming infringement but should the Defendant persuade the jury that there was fair use, then there was no infringement. That is, fair use defeats the infringement action. Infringement is a legal action and fair use a legal defense to it. Fair use of a copyrighted work is not an infringement. Fair use is a border to the legal monopoly privilege given by the state to the copyright holder to exploit the copyrighted work exclusively. Under these circumstances, a jury is entitled to consider whether there has been an infringement, or whether there has been no infringement because there was fair use.

b. Even if one were to consider the fair use defense as equitable in a Seventh Amendment sense, the Supreme Court has held that "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." Ross v. Bernhard, 396 U.S. 531, 537-38, 24 L. Ed. 2d 729, 90 S. Ct. 733 (1970) (emphasis added). Where there are issues common to both equitable and legal claims, "the legal claims involved in the action must be

determined prior to any final court determination of [the] equitable claims." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479, 8 L. Ed. 2d 44, 82 S. Ct. 894 (1962)(footnote omitted). Otherwise, "prior non-jury trial of the equitable claims may infringe the right to jury trial on the legal claims because of the collateral estoppel or *res judicata* effect of a prior judicial determination of issues common to the two sets of claims." Calnetics Corp. v. Volkswagen of America, Inc., 532 F.2d 674, 690 (9th Cir.), cert. denied, 429 U.S. 940, 50 L. Ed. 2d 309, 97 S. Ct. 355 (1976)(citation omitted).

Fair use issues here will overlap completely with issues to be tried to the jury relating to the assessment of damages.

c. The Court's footnote 1 speculates that the propensity of courts to resolve questions of fair use on summary judgment "may suggest, as a functional matter, that fair use is an equitable question more appropriately decided by a judge than a jury." The few jury trials that show up in Beebe's study if anything emphasize that copyright law mostly serves commercial parties who by and large avoid jury trials. This emphasizes the need to preserve jury trial when a commercial plaintiff sues a noncommercial defendant. The relevant question to ask of the Beebe study is, how many of the 297 cases were brought by commercial plaintiffs against a noncommercial user. The case against Joel Tenenbaum far more like a criminal prosecution that

4

a civil action between commercial litigants.

## II. There are disputed issues of fact and law relating to the fairness of the Defendants conduct that make summary judgment improper.

According to the copyright statute, many factors must be considered by the factfinder at trial. The statute (17 U.S.C. § 107) lists four and contemplates others, recognizing the appropriateness of case by case analysis. "[F]air use analysis must always be tailored to the individual case." Harper & Row v. Nation, 471 U.S. 539, 552 (1985). On each of various fair use factors both the facts and the significance of facts are in dispute. Summary judgment is therefore not warranted.

   1. There is a dispute as to the significance of **the purpose and character of Joel's use**. The factfinder is to consider whether such use is of a commercial nature or is for nonprofit educational purposes;

   a.   For this purpose it makes sense to see commerciality as a spectrum with Joel's use at one end of it and the business of selling copies of copyrighted works for profit at the other. Joel's use was entirely noncommercial. If Joel's conduct is considered commercial for purposes of fair use analysis then there can be no category of noncommercial unpermitted copying.

See Deposition of Joel Tenenbaum of July 8, 2009 Audio Recording, hereinafter "JT Depo. II Audio"[1], at 1:50-2:14; see also JT Depo. II 198:11-13 (Doc. No. 875-3 at 41).

    b. Joes use was "nonprofit educational." His purpose was to learn about the music, and share knowledge with friends. He was not out to make a profit. See JT Depo. II Audio at 2:30-4:08; 4:10-4:50.

    2. There is dispute about the significance of **the nature of the copyrighted work**: The nature of the copyrighted work Joel copied and shared was free mp3 files openly available on the internet. Joel was not the original seeder of any of these files.

    3. There is dispute concerning **the amount and substantiality of the portion used in relation to the copyrighted work as a whole**: The copyrighted works are registered as whole albums, not individual songs. Joel shared single songs, not whole albums.

    4. There is dispute both about the **effect of Joel's use upon the potential market for or value of the copyrighted work**:

---

[1] The audio file here referenced, "JTDepoII.mp3", is being e-mailed to the Court's Docket Clerk and counsel for the Plaintiffs concurrently with the filing of this opposition.

a. We do not need to speculate on the effect on the potential market since we are now six years beyond the litigated events. We can look to see if there has been any discernible actual effect on the market of Joel's downloading and sharing, and if so how much. Plaintiffs have shown no discernible actual effect from Joel's conduct on Plaintiff's revenues — revenues which were only disclosed to the Defendant on Thursday, July 16, 2009.

b. Plaintiffs suggest the possibility of lost revenue had Joel purchased rather than downloaded for free. While the maximum actual damages for a download is arguably ~35 cents (70 cents wholesale price less ~35 cents in saved royalties & other expenses) not every download equals a lost sale. In <u>USA v. Dove</u>, 585 F. Supp. 2d 865 (W.D. VA November 7, 2008), in the context of a criminal copyright case, the presiding judge rejected the RIAA's application for an order of restitution, stating:

> Customers who download music and movies for free would not necessarily spend money to acquire the same product.... Certainly 100% of the illegal downloads...did not result in the loss of a sale, but both Lionsgate and RIAA estimate their losses based on this faulty assumption.... Those who download movies and music for free would not necessarily purchase those movies and music at the full purchase price... it does not necessarily follow that the downloader would have made a legitimate purchase if the recording had not been available for free.... RIAA's request problematically assumes that every illegal download resulted in a lost sale...."

Plaintiffs also ignore the sampling effect where free downloads are used to sample music, some of which is subsequently purchased. (JT Depo. II Audio at 2:30-4:05)

c. Plaintiffs suggest that they may have lost revenue because others were able to download from Joel. But the five songs in question were immensely popular with so many free mp3's available that the absence of Joel's would have no effect whatever on availability to others. See Deposition of J.A. Pouwelse, July 2, 2009, at 211.

d. Oberholzer-Gee Study: On May 15, 2009 the leading researcher in the field published a study of which the following is stated in the introduction:

> Data on the supply of new works are consistent with our argument that file sharing did not discourage authors and publishers.  The publication of new books rose by 66% over the 2002-2007 period.  Since 2000, the annual release of new music albums has more than doubled, and worldwide feature film production is up by more than 30% since 2003.  At the same time, empirical research in file sharing documents that consumer welfare increased substantially due to the new technology.
> Over the past 200 years, most countries evolved their copyright regimes in one direction only: lawmakers repeatedly strengthened the legal protections of authors and publishers, raising prices for the general public and discouraging consumption. Seen against this backdrop, file sharing is a unique experiment that considerably weakened copyright protections.  While file sharing disrupted some traditional business models in the creative industries, foremost in music, in our reading of the evidence there is little to suggest that the new technology has discouraged artistic production.  Weaker copyright protection, it

seems, has benefited society.

The copyright law is not a guarantee against business loss from progress; not in the buggy-whip/automobile businesses, not in the CD/online music business. The music business is alive and thriving. The death of Michael Jackson produced record breaking world-wide peer-to-peer traffic, with the music business making record-breaking profits riding on it.

5. There is a dispute as to whether Plaintiffs could be said in equity to have **assumed some degree of risk** in releasing their copyrighted work into an environment in which they must have known and appreciated that music fans with computers would rip, mix and burn their CD's, and hence that their music would inevitably become available to internet users in mp3 form.

6. There is dispute as to whether the **copyright holders' marketing activities contributed to the attractiveness** of downloading and sharing the copyrighted work in a way that might reasonably be thought to bear on the fairness of punishing the music fan for downloading and sharing it: (JT Depo. II Audio at 9:40-10:22)

7. There is dispute about the fact and the significance of the **relative unattractiveness of the copyright holder's permitted alternative** to the free downloading and sharing alternative, the effective choices being to buy a CD and whole

album; Joel's effective choice was to buy a CD and whole album. "A key, though not necessarily determinative, factor in fair use is whether or not the work is available to the potential user. If the work is ... unavailable for purchase through normal channels, the user may have more justification for reproducing it." Harper & Row v. Nation, 471 U.S. 539, 553 (1985)

    8. There is a dispute about the fairness of **imposing on parents** to police their children's computer use and live in fear that their children will fail to follow a rule they neither understand nor agree with.

    9. There is a dispute as to the fairness of **imposing on schools and universities** of necessity to enforce rules that run contrary to their educational mission and constrain the efficiency and experimental reach of their information systems, under threat of liability for allowing their students access to the internet world of their peers. See Deposition of J.A. Pouwelse, July 2, 2009; see also Expert Report of John G. Palfrey, Jr.

    10. There is dispute about the fairness of the **disproportion** of the legal cause of action and the threat of statutory damages to the magnitude of the Joel's actions.

                                Respectfully submitted,

Dated: July 17, 2009				/s/Charles R. Nesson			
						Charles R. Nesson
						Counsel for Joel Tenenbaum

**CERTIFICATE OF SERVICE**

    I, the undersigned hereby certify that on July 17, 2009, I caused a copy of the foregoing RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER OF JULY 14, 2009 to be served upon the Plaintiffs via the Electronic Case Filing (ECF) system.

    I further certify that I caused a copy of the audio file JTDepoII.mp3 to be served upon the Court via e-mail to the Court's Docket Clerk, and upon the Plaintiffs, at the following addresses:

        Timothy M. Reynolds
        Timothy.Reynolds@hro.com
        Eve G. Burton
        Eve.Burton@hro.com
        Laurie J. Rust
        Laurie.Rust@hro.com
        Daniel J. Cloherty
        dcloherty@dwyercollora.com
        Victoria L. Steinberg
        vsteinberg@dwyercollora.com

        /s/Charles R. Nesson
        Charles R. Nesson
        Attorney for Defendant