UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| )<br>CAPITOL RECORDS, INC., et al., )<br>        Plaintiffs, )<br>           )<br>v. )<br>           )<br>NOOR ALAUJAN, )<br>        Defendant. )<br>) | Civ. Act. No. 03-cv-11661-NG<br>(LEAD DOCKET NUMBER) | |

|  |  |
|---|---|
| )<br>SONY BMG MUSIC ENTERTAINMENT, )<br>et al.,       Plaintiffs, )<br>           )<br>v. )<br>           )<br>JOEL TENENBAUM, )<br>        Defendant. )<br>) | Civ. Act. No. 07-cv-11446-NG<br>(ORIGINAL DOCKET NUMBER) |

**PLAINTIFFS' RESPONSE TO COURT'S JULY 14, 2009 ORDER REGARDING FAIR USE ISSUES**

In its July 14, 2009 Order, the Court invited the parties to brief "whether fair use was historically treated as an equitable defense, and if so, whether it is properly decided by a judge or jury." (Doc. 880, at 2). As described below, Plaintiffs respectfully submit that this is not necessary because the Court should resolve this issue on summary judgment. Neither of Defendant's two opposition briefs[1] raises any issue of material fact. While the parties may

---

[1] Defendant filed his Opposition on July 17, 2009 (doc. 889) and filed a "Memorandum of Law to Supplement Defendant's Opposition" on July 20, 2009 (doc. 890), three days after the deadline to file oppositions to summary judgment. *See* June 16, 2009 Order (Doc. 850) (Setting July 17, 2009 as deadline for oppositions to summary judgment).

disagree as to which factors should be considered in the determination of fair use, there is no disagreement as to the underlying facts themselves.  Accordingly, judgment should be entered as a matter of law on Defendant's fair use defense.

As the Court is aware from its Order, there is a long history to the fair use doctrine. *Folsom v. Marsh*, 9 F. Cas. 342 (D. Mass. 1841); *Backus v. Gould*, 7 How. 798, 12 L. Ed. 919 (1849); *Feltner v. Columbia Pictures Telev. Inc.*, 523 U.S. 354 (1998); *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 561 (1985); *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 590 (1994); Barton Beebe, An Empirical Study of U.S. Copyright Fair Use Opinions, 1978-2005, U. PA. L.R. 549 (2008); Pierre N. Leval, Fair Use Rescued, 44 U.C.L.A. L. REV. 1449, 1456–1457 (1997); Pierre N. Leval, Toward a Fair Use Standard, 103 HARV.L. REV. 1105 (1990).  In his Response to the Court's Order, Defendant has taken the position that disputed issues of material fact are to be determined by the jury.  Without expanding on the extensive history of fair use, for purposes of this case, and this case alone, to the extent the Court finds an issue of triable fact and does not subsequently issue a directed verdict, Plaintiffs stipulate that the issue of fair use can be considered by the jury.

## SUMMARY JUDGMENT ON FAIR USE IS APPROPRIATE

Plaintiffs respectfully submit that whether fair use is properly decided by the judge or jury is of no moment in this case.  Indeed, as demonstrated in Plaintiffs' Memorandum In Support of their Motion for Summary Judgment (doc. 872), there are no disputed issues of material fact to be determined by the finder of fact and judgment should enter in Plaintiffs' favor as a matter of law.  In fact, every court to rule on fair use in the P2P filesharing context has rejected it as a matter of law.  (*See id.* at 10).  Because Defendant fails all four statutory factors and his proposed additional factors have either been rejected as a matter of law or must be

rejected as patently absurd, the Court should enter judgment in Plaintiffs' favor on Defendant's

fair use defense.  *See Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119, 1120

(9th Cir. 1997) ("'Fair use is a mixed question of law and fact.' If there are no genuine issues of

material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable

trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the

challenged use qualifies as a fair use of the copyrighted work."  (citing *Harper & Row Pubs.,*

*Inc. v. Nation Enters.,* 471 U.S. 539, 559 (1985) (other citations omitted)); *accord Fitzgerald v.*

*CBS Broad., Inc.*, 491 F. Supp. 2d 177, 183 (D. Mass. 2007) ("Fair use determinations usually

present mixed questions of fact and law.  However, where 'no material historical facts are at

issue' and '[t]he parties dispute only the ultimate conclusions to be drawn from the admitted

facts,' fair use can be decided by the Court.") (citation omitted).  Accordingly, there is nothing

for the finder of fact to decide and it does not matter whether fair use belongs to the judge or

jury.

On July 17, 2009, Defendant filed his Opposition to Plaintiffs' Motion for Summary

Judgment.  But, Defendant's Opposition fails to contest a single fact designated on Plaintiffs'

Statement of Material Facts.  Accordingly, each of the facts on Plaintiffs' Statement of Material

Facts is deemed admitted.  Mass. L.R. 56.1.  As the underlying facts are not in dispute, only the

legal conclusions to be drawn from those facts remain.  Accordingly, summary judgment on fair

use is appropriate. *Fitzgerald* , 491 F. Supp. 2d at 183.

In Defendant's brief, Defendant seeks to create issues of material fact by listing a series

of arguments that are totally lacking in any evidentiary support, are nothing but conclusory

statements, and, in many instances, are simply not relevant to the question of fair use.

Defendant's asserted disputed issues are:

#1419607 v1 den

- Whether Defendant's conduct in uploading and downloading sound recordings through a P2P network was commercial in nature.  (Opposition at 5-6.);

- Whether Defendant's purpose was educational because he wanted to learn about the music and share knowledge with friends.  (Opposition at 6.);

- Whether the sound recordings' existence on the Internet in .mp3 files which Defendant could obtain changed the nature of the sound recordings.  (Opposition at 6.);

- Whether Defendant infringed an entire copyrighted work by copying single songs.  (Opposition at 6.);

- Whether Defendant's conduct had any discernable effect on the market for Plaintiffs' legitimate sound recordings.  (Opposition at 6-9.);

- Whether Plaintiffs assumed the risk by releasing the sound recordings when they knew that music fans might upload the recordings to the Internet.  (Opposition at 9.);

- Whether Plaintiffs' marketing activities contributed to the attractiveness of downloading and uploading the recordings.  (Opposition at 9.);

- Whether the relative unattractiveness of permitted alternatives rendered legitimate recordings unavailable.  (Opposition at 9-10);

- Whether it is fair to impose on parents the need to police their children's activities and live in fear that their children will fail to follow a rule they neither understand nor agree with.  (Opposition at 8.);

- Whether it is fair to impose on schools and universities the necessity to enforce rules that run contrary to their educational mission and constrain the efficiency and experimental reach of their information systems.  (Opposition at 9.);

- Whether the alleged disproportion of the legal cause of action and the threat of statutory damages to the magnitude of Defendant's actions renders his use fair.  (Opposition at 10.).

These arguments, as described below, have no merit and do not create a disputed issue of fact sufficient to survive summary judgment.

**1.     Whether Defendant's conduct in uploading and downloading sound recordings through a P2P network was commercial in nature.**

Defendant argues that there is a disputed issue as to whether his conduct is commercial.

But there is no dispute as to what he did.  Indeed, Defendant admits using KaZaA to download

4

the copyrighted recordings without paying for them and, in exchange, to distribute the recordings to others.  *See* SOF at ¶11 ("Defendant used the KaZaA program on his computer and the sublimeguy14@KaZaA user name to download songs from other KaZaA users on the Internet"); SOF at ¶12 ("Defendant understood that other users of KaZaA could download files from his shared folder and saw from the KaZaA 'traffic tab' on his computer that other KaZaA users were downloading files from his KaZaA shared folder."); SOF at ¶14 ("Defendant used Napster prior to using KaZaA and, when Napster was shut down, he switched to KaZaA because he continued to want a source for downloading music without paying for it."); SOF at ¶¶1, 10 (Defendant was distributing 816 audio files from his KaZaA shared folder to all of the KaZaA users); SOF at ¶15 ("The whole purpose behind P2P networks such as KaZaA is to allow users to share files with other users for free.").  As the only dispute here is the Court's legal interpretation of Defendant's actions, summary judgment is appropriate.

Moreover, as demonstrated in Plaintiffs' Motion, the Copyright Act itself concludes that conduct such as Defendant's is commercial in nature.  *See* 17 U.S.C. § 101 (defining "financial gain" as the "expectation of receipt, of anything of value, including the receipt of other copyrighted works).  Similarly, case law make clear that Defendant is a commercial user.  *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (file trading by Napster users constituted a "commercial use" for purposes of the fair use analysis); *BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th Cir. 2005)  (rejecting individual P2P user's claim that she was a non-profit user).  Accordingly, the Court should conclude that Defendant's actions were commercial.

#1419607 v1 den

**2.      Whether Defendant's purpose was educational because he wanted to learn about the music and share knowledge with friends.**

Defendant argues that there is a disputed issue as to whether his purpose was educational. Opposition at 6.  But again, there is no dispute as to what Defendant did.  Defendant admits using KaZaA because he wanted "a source for downloading music without paying for it," SOF at ¶14, and that he "wanted to learn about the music."  These facts, even if true, do not make his purpose "educational."  To be educational under the fair use test, the defendant must have used the copyrighted material in some sort of pedagogical context (typically a class, essay book, op ed, etc.) to discuss the material itself or to illustrate some other point.  The key is that the material is used along with some form of commentary.  Simply passing along a complete copy of a sound recording without comment so that others may also enjoy it for free is not "educational." Further, any claim that Defendant's use was educational is vitiated by the fact that Defendant not only downloaded complete copyrighted sound recordings, but also distributed them to millions of KaZaA users without commentary.

**3.      Whether the sound recordings' existence on the Internet in .mp3 files which Defendant could obtain changed the nature of the sound recordings.**

Defendant appears to argue that the copies of sound recordings he downloaded and distributed were "freely available on the Internet" in the .mp3 format, and therefore, such copies are not entitled to copyright protection.  (Opposition at 6.).  This argument fails to recognize that the analysis of "the nature" of the copyrighted work looks to the substance of the underlying work (for example, is it a work entirely created by the author or is it a knockoff of an original piece), not the format of the work.  It is undisputed that Defendant downloaded and distributed Plaintiffs' copyrighted sound recordings in some file format and such recordings were identical to the works commercially distributed by Plaintiffs. SOF at ¶11 ("Defendant used the KaZaA program on his computer and the sublimeguy14@KaZaA user name to download songs from

6

other KaZaA users on the Internet"); SOF at ¶12 ("Defendant understood that other users of

KaZaA could download files from his shared folder and saw from the KaZaA 'traffic tab' on his

computer that other KaZaA users were downloading files from his KaZaA shared folder.").

Defendant does not – and indeed cannot - offer support for his apparent argument that sound

recordings in .mp3 form on the Internet are somehow no longer creative in nature nor subject to

copyright protection.

To the contrary, cases involving sound recordings on the Internet have unanimously held

that the recordings are creative in nature and that this factor favors the copyright holder.  "The

creative recordings here being copied are 'close[] to the core of intended copyright protection,'

and, conversely, far removed from the more factual or descriptive work more amenable to fair

use.'"  *UMG Recordings,* 92 F. Supp. 2d at 351 (S.D.N.Y. 2000) (citing *Campbell*, 510 U.S. at

586)*; Napster,* 239 F.3d at 1016 ("plaintiffs' 'copyrighted musical compositions and sound

recordings are creative in nature . . . which cuts against a finding of fair use under the second

factor'") (citation omitted).

**4.       Whether Defendant infringed an entire copyrighted work by copying single songs.**

Defendant suggests that because he infringed single songs, not whole albums, he did not

infringe entire copyrighted works.  (Opposition at 6.)  As Defendant does not dispute that he

infringed entire songs, there is no disputed issue of material fact – only the legal significance of

that fact – summary judgment is appropriate.  Defendant, however, is also wrong on the law.

The Copyright Act unambiguously provides that a "compilation, [is] composed of

'separate and independent works.'"  *Country Road Music v. MP3.com, Inc*., 279 F. Supp.2d 325,

332 (S.D.N.Y. 2003) (citing 17 U.S.C.A. § 101 (West Supp. 2003)); *see* H.R. Rep. No. 1476,

94th Cong., 2d Sess. at 162 (1970) (showing that Congress intended to draw a sharp distinction

between the number of "works" and the number of registrations.).  Indeed, in *Venegas-*

7

*Hernandez v. Sonolux Records*, 370 F.3d 183 (1st Cir. 2004), the First Circuit held that each sound recording is a separate copyrighted work.  *See BMG Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. Ill. 2005) (In evaluating the amount and substantiality of use in action against individual P2P user, the court held that "she downloaded (and kept) whole copyrighted songs (for which, as with poetry, copying of more than a couplet or two is deemed excessive")).  *See also Atlantic Recording Corp. v. Anderson*, 2008 U.S. Dist. LEXIS 53654 (S.D. Tex. Mar. 12, 2008) (granting summary judgment and awarding record company plaintiffs statutory damages for each recording infringed where the respective albums were registered as compilations); *Elektra Entm't Group, Inc. v. Bryant*, 2004 U.S. Dist. LEXIS 26700 (C.D. Cal. Feb. 13, 2004) (same); *Priority Records LLC v. Knox*, 2008 U.S. Dist. LEXIS 1141 ( E.D. Mich. Jan. 8, 2008) (same).

Moreover, although Plaintiffs have chosen not to sue on every infringed track, that does not mean that Defendant infringed only one track from the relevant albums.  In fact, Defendant previously admitted sharing entire albums.  (J. Tenenbaum Dep. Vol. II at 60:23 – 61:4, excerpts attached as Exhibit A).  Unsurprisingly, Exhibit B to the Complaint shows that Defendant was distributing complete albums and large percentages of albums.[2]

**5.     Whether Defendant's conduct had any discernable effect on the market for Plaintiffs' legitimate sound recordings.**

Defendant argues that Plaintiffs have shown no discernable actual effect from Defendant's infringement.  (Opposition at 6-9).  First, Defendant misstates the standard.  To demonstrate entitlement to summary judgment, Plaintiffs do not have to show that Defendant's

---

[2] For example, all 13 sound recordings on Limp Bizkit's Three Dollar Bill, Yall$ album and 15 of the 16 recordings from Limp Bizkit's Rearragned album were in Defendant's shared folder when he was caught infringing.  *See* Exhibit B to Complaint.  Similarly, all 12 sound recordings on Blink 182's Enema of the State album were in Defendant's shared folder.  *See id*. Also, 11 of the 18 sound recordings from Eminem's Marshall Mathers LP album were in Defendant's shared folder.  *See id*.

conduct had a discernable effect on the market.  To the contrary, Defendant, as the proponent of the affirmative defense, bears the burden of demonstrating that, if the conduct became widespread, it would not have any effect on the legitimate markets – existing or potential – for Plaintiffs' copyrighted works.  *Harper & Row*, 471 U.S. at 568.

Defendant offers no evidence to dispute the expert report of Stan Liebowitz, who noted that illegal file-sharing alternatives merely leech off the efforts of others who actually create the music to which the public wishes to listen.  (Declaration and Report of S. Liebowitz at 9, ¶¶ 41-42).  In response, Defendant offers only an introduction from the Oberholzer-Gee study. Opposition at 8.  Mr. Oberholzer-Gee has not been named as an expert in this case, his opinion has not been subject to cross-examination, and his study is not properly before the Court. Nonetheless, even if it were properly before the Court, the introduction simply says that society has benefitted from P2P networks and that, despite P2P's weakening of copyright protections, artists continue to produce creative works.  *Id.*  This does nothing to establish that widespread P2P use does not harm the market for legitimate recordings.  That society may benefit from increased access to copyrighted works does not render a use fair, *Harper & Row*, 471 U.S. at 569, nor disprove harm to a market.

Moreover, the introduction even admits that "file-sharing disrupted some traditional business models in the creative industries, foremost in music."  Opposition at 8.  Accordingly, the introduction acknowledges that P2P has had a disruptive effect on the market for legitimate sound recordings.  This is not a case of competing business models, as Defendant claims, but a situation in which a legitimate market has been upended by rampant copying and distribution of sound recordings for free.  (Declaration and Report of S. Liebowitz at 9, ¶¶ 41-42)

#1419607 v1 den

Finally, Plaintiffs addressed Defendant's "sampling" argument in their Motion.  Indeed, the Seventh Circuit squarely rejected Defendant's "sampling" argument, *i.e.*, that his downloading should be considered fair use because he "sampled" at least one of the songs at issue and later purchased the song.  (J. Tenenbaum Dep. Vol. II at 108:23 to 109:20).  This "try-before-you-buy" argument simply does not hold water because "many people are bound to keep the downloaded files without buying originals."  *Gonzalez*, 430 F.3d at 890.  As part of the court's analysis, Judge Easterbrook distinguished alleged file sharing sampling from the authorized previews of sound recordings that are available to consumers.  Unlike illegal file sharing, authorized previews "share the feature of evanescence: if a listener decides not to buy (or stops paying the rental fee), no copy remains behind."  *Id.* at 891.  Here, Defendant did not delete the copies he downloaded to "sample" because they were all found in his shared folder.  Moreover, Defendant's sampling argument ignores completely the fact that Defendant not only downloaded these sound recordings, he maintained them, burned them to CDRs, and also distributed them to other KaZaA users.  Sampling can in no way excuse these behaviors.

6.    **Whether Plaintiffs assumed the risk by releasing the sound recordings when they knew that music fans might upload the recordings to the Internet.**

Defendant appears to be arguing, for the first time, an affirmative defense of assumption of the risk under the guise of a new fairness factor.  First, the deadline to amend Defendant's Answer to add an affirmative defense has long since passed.  Second, the argument is patently absurd.  The Copyright Act does not demand that a copyright owner take particular steps to limit access to or reproduction of its works in order to enjoy full protection.  As this argument, if accepted, would discourage copyright holder's from publishing any works that could potentially be infringed, it clearly runs contrary to the purposes of the Copyright Act and should be rejected.

7.    **Whether Plaintiffs' marketing activities contributed to the attractiveness of downloading and uploading the recordings.**

Defendant seems to be arguing that if Plaintiffs' aggressively market a recording, it would be unfair to punish a music fan for infringing it. (Opposition at 9.) If accepted, Defendant's argument would give a carte blanche to infringe the recordings in which Plaintiffs invest substantial resources to market, effectively destroying all copyright protection for the recordings Plaintiffs value most. Such an absurd proposition does not create a disputed issue of material fact.

8.     **Whether the relative unattractiveness of permitted alternatives rendered legitimate recordings unavailable.**

Defendant argues that because he was forced to choose between illegally downloading a single sound recording or purchasing an entire CD, the copyrighted sound recordings were effectively unavailable, thus rendering his use fair. Opposition at 9-10. Defendant's "availability" argument fails on the law and the undisputed facts.

While the Supreme Court has never formally adopted this consideration as one that favors an alleged infringer, it has nonetheless suggested that reference to a work's availability is appropriate. *See Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 553 ("'If the work is "out of print" and unavailable for purchase through normal channels, the user may have more justification for reproducing it.'") (quoting Senate Report); *see also Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1264, n. 8 (2d Cir. 1986), *Triangle Publ'ns, Inc. v. Knight-Ridder Newspapers, Inc.,* 626 F.2d 1171, 1176 n.14 (5th Cir. 1980) ("[I]f the copyrighted work is out of print and cannot be purchased, a user may be more likely to prevail on a fair use defense.").

However, both the Senate Report cited in *Harper & Row* and cases discussing "availability" in the fair use context make clear that a work is unavailable when it cannot be obtained through normal channels of commerce, such as book that is out of print, or a movie that is not generally distributed. *Duffy v. Penguin Books USA*, 4 F. Supp. 2d 268, 275 (S.D.N.Y.

11

1998) ("Because Fashion Formula was out-of-print at the time, Nanfeldt was unable to purchase the book. Thus, Duffy lost nothing as a result of Nanfeldt's decision to photocopy portions of the book."); *Hofheinz v. A&E TV Networks*, 146 F. Supp. 2d 442, 447-48 (S.D.N.Y. 2001) (movie was unavailable where film not in general circulation and only leased for showings at science-fiction film festivals and the like). By contrast, mere inconvenience or unavailability in an infringer's preferred form do not render an item unavailable. *Encyclopedia Britannica Educational Corp. v. Crooks*, 542 F. Supp. 1156, 1177 (W.D.N.Y. 1982). The fact that Defendant may have had to purchase an entire album in order to get his favorite track did not render the track unavailable. "Copyright is not designed to afford consumer protection or convenience but, rather, to protect the copyrightholders' property interests." *UMG Recordings*, 92 F. Supp. 2d at 352 (rejecting defendant's proposed fair use factor that it "provides a useful service to consumers that, in its absence, will be served by 'pirates.'"). Moreover, Plaintiffs' choice of media "does not abrogate their rights as copyright holders." *See Encyclopedia Britannica*, 542 F. Supp. at 1180 (entering summary judgment on fair use and rejecting defendant's additional factors).

Moreover, Defendant's factual premise is simply untrue. Every one of the 30 sound recordings at issue was available for digital download by track by 2004, and all but one was available in 2003. *See* Plaintiffs' Response to Defendant's Fair Use Interrogatories, attached as Exhibit B.

**9.    Whether it is fair to impose on parents the need to police their children's activities and live in fear that their children will fail to follow a rule they neither understand nor agree with.**

Defendant argues that the Copyright Act's imposition on parents should somehow be a factor rendering his use fair. (Opposition at 8.) However, that assertion has nothing to do with the facts of this case and does not create a disputed issue of material fact. This action is against

Defendant Joel Tenenbaum, who was a twenty year old college student when he was caught infringing Plaintiffs' copyrighted works.  The Copyright Act imposes no need on parents to police the online activities of a grown man.

**10.    Whether it is fair to impose on schools and universities the necessity to enforce rules that run contrary to their educational mission and constrain the efficiency and experimental reach of their information systems.**

Defendant similarly argues that the Copyright Act's imposition on school and universities should somehow be a factor rendering his use fair.  (Opposition at 9.)  However, that assertion has nothing to do with the facts of this case and does not create a disputed issue of material fact. Defendant was caught infringing while connected to a Cox Communications Internet account while home from college for the summer.  SOF ¶8.  While Defendant may also have violated his college's policies by using its network to infringe copyrighted sound recordings, that is not relevant to the case at bar.  Similarly, while Plaintiffs could engage Defendant's counsel in an interesting debate on whether universities' educational missions do, or should, include teaching respect for intellectual property, that is not relevant to the issue before the Court.

**11.    Whether the alleged disproportion of the legal cause of action and the threat of statutory damages to the magnitude of Defendant's actions renders his use fair.**

Finally, Defendant believes that this action is unfair and that the statutory damages scheme is unconstitutionally disproportionate.  Opposition at 10.  However, this is not a question of fact, but a question of law to be determined by the Court.  The Court has noted that Defendant's constitutional challenge will not become ripe unless and until the jury awards damages against Defendant.

Similarly, Defendant's attempt to disguise his abuse of process counterclaim as a new fair use factor is improper and should be rejected, as the Court previously ruled.  *See* June 15, 2009 Minute Order ("Even if the Court views file-sharing lawsuits as unwise and the statutory

13

penalties a remarkably poor policy judgment, the objectives sought by this suit are well within those contemplated by Congress and the Copyright Act, 17 U.S.C. s. 101 et seq.).

As Defendant has not established any disputed issues of material fact, summary judgment should be entered in Plaintiffs' favor

## CONCLUSION

As there are no disputed issues of fact to be determined by the finder of fact, summary judgment should be entered on Defendant's fair use defense.  For purposes of this case, and this case alone, to the extent the Court finds an issue of triable fact and does not subsequently issue a directed verdict, Plaintiffs stipulate that the issue of fair use can be considered by the jury.

Respectfully submitted this 20th day of July, 2009.

SONY BMG MUSIC ENTERTAINMENT;
WARNER BROS. RECORDS INC.;
ATLANTIC RECORDING CORPORATION;
ARISTA RECORDS LLC; and UMG
RECORDINGS, INC.

By their attorneys,

By:    s/ Eve G. Burton
        Timothy M. Reynolds (pro hac vice)
        Eve G. Burton (pro hac vice)
        Laurie J. Rust (pro hac vice)
        HOLME ROBERTS & OWEN LLP
        1700 Lincoln, Suite 4100
        Denver, Colorado 80203
        Telephone: (303) 861-7000
        Facsimile: (303) 866-0200
        Email:  timothy.reynolds@hro.com
             eve.burton@hro.com
             lauri.rust@hro.com

        Matthew J. Oppenheim (*pro hac vice*)
        THE OPPENHEIM GROUP
        7304 River Falls Drive
        Potomac, MD 20854
        Telephone (301) 299-4986
        Facsimile:  (866) 766-1678
        Email:  matt@oppenheimgroup.net

        Daniel J. Cloherty
        DWYER & COLLORA, LLP
        600 Atlantic Avenue - 12th Floor
        Boston, MA 02210-2211
        Telephone:  (617) 371-1000
        Facsimile:  (617) 371-1037
        Email:  dcloherty@dwyercollora.com

        ATTORNEYS FOR PLAINTIFFS

#1419607 v1 den

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 20, 2009.

s/ Eve G. Burton

#1419607 v1 den