UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAPITOL RECORDS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NOOR ALAUJAN,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. Act. No. 03-cv-11661-NG<br>(LEAD DOCKET NUMBER) |

| | |
|---|---|
| SONY BMG MUSIC ENTERTAINMENT,<br>et al.,           Plaintiffs,<br><br>v.<br><br>JOEL TENENBAUM,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. Act. No. 07-cv-11446-NG<br>(ORIGINAL DOCKET NUMBER) |

**PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT**

Plaintiffs respectfully submit this Motion for Entry of Judgment pursuant to Fed. R. Civ.

P. 58(d). Plaintiffs request that the Court enter monetary judgment as set forth in the Verdict

Form (Doc. 911) on July 31, 2009, as well as injunctive relief, originally requested by Plaintiffs

in their Complaint (Doc. No. 1, Case No. 07cv11446). As explained below, courts routinely

grant injunctive relief to copyright holders under 17 U.S.C. § 502. Furthermore, an injunction

pursuant to 17 U.S.C. §§ 502 and 503 in this matter will prohibit Defendant from causing

additional irreparable injury to Plaintiffs. Finally, given Defendant's conduct, both during the

course of this litigation and post-trial, in promoting continued piracy, additional injunctive

#1424679 v1 den

language forbidding Defendant from acting in concert with those committing copyright

infringement is appropriate.  In support of their motion, Plaintiffs state as follows:

<strong>STATEMENT OF FACTS</strong>

On August 7, 2007, Plaintiffs filed the Complaint in this matter (Compl., Doc. No. 1,

Case No. 07cv11446-NG).  In addition to seeking statutory damages under 17 U.S.C. § 504(c)

for infringement of Plaintiffs' copyrights (Compl. ¶ 16), Plaintiffs also requested that the Court

grant injunctive relief under 17 U.S.C. §§ 502 and 503, prohibiting Defendant from further

infringing Plaintiffs' copyrights and ordering Defendant to destroy all copies of sound recordings

made in violation of Plaintiffs' exclusive rights (Compl. ¶ 17).  Plaintiffs requested such

injunctive relief because Defendant's conduct "is causing and, unless enjoined and restrained by

this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be

compensated or measured in money."  (*Id*.)

On July 31, 2009, the jury impaneled in this case returned a verdict against Defendant,

finding that Defendant willfully infringed 30 of Plaintiffs' copyrighted sound recordings.  (Doc.

No. 911.)  The jury awarded statutory damages under 17 U.S.C. §504(c) to Plaintiffs in the

amount of $22,500 per sound recording infringed by Defendant.  (*Id*.)

Defendant's conduct before trial, throughout this litigation, and post-trial, requires entry

of an injunction prohibiting him from further infringement of Plaintiffs' copyrights.  First,

Defendant testified at trial, and the forensic evidence introduced at trial established, that

Defendant engaged in massive infringement of Plaintiffs' copyrighted sound recordings and that

he still has thousands of infringing sound recordings on his computer.  Defendant testified that he

has not deleted, and apparently does not intend to delete, the infringing recordings.

Second, Defendant lied to Plaintiffs throughout this litigation about the extent of his

2

infringement, the purposeful destruction of his computer used to engage in this infringement, and his continued possession of the infringing recordings.

Third, during the litigation, Defendant continued to infringe by downloading and distributing copyrighted sound recordings over multiple P2P platforms and only recently claims to have stopped doing so.

Fourth, in late March 2009, Defendant's counsel posted and was distributing the very sound recordings at issue in this case through a blog that Defendant's counsel used to discuss the case. The sound recordings were distributed with an image of Defendant's counsel, and the statement "Destroy Capitalism – Support Piracy." (See Plaintiffs' June 5, 2009 Motion to Compel Discovery Responses, Doc. No. 842). This blatant disregard of copyright, along with the image and slogan posted with the infringing recordings, shows a continued disdain for copyright laws and Plaintiffs' rights. *See* Doc. No. 850, June 16, 2009 Order granting motion to compel, at 4.

Finally, on or about August 14, 2009, Defendant posted to the "JoelFightsBack" twitter site—a site intended to publicize Defendant and this case—the following post: "**interesting: a "joel" torrent list of the 30 songs is now on thepirateBay/other torrent sites and is being DL widely in protest. [#JFB](#)**." *https://twitter.com/joelfightsback (*last checked August 14, 2009) (emphasis added). The Pirate Bay's homepage, to which Defendant directed his readers, prominently featured a photograph of Defendant and an advertisement and link to an allegedly RIAA approved torrent, "DJ Joel – The $675,000 Mixtape," containing the 30 songs at issue in this case:

3



(**Exhibit A**).  When a user clicks on the image, they are brought to a Torrent site that allows users

to easily, and without authorization or cost, download the 30 sound recordings for which

Defendant was found liable.

(*http://thepirateBay.org/torrent/5048895/Joel_Tenenbaum_Track_List_hugs_to_the_RIAA_(final),*

last visited August 14, 2009*)* (emphasis added).[1]  Additionally, Defendant's website regarding this

case, *www.joelfightsback.com,* includes literally dozens of other users who have picked up the

"tweet" from *joelfightsback* and have reposted it to their own blogs and twitter feeds, thereby

encouraging countless other individuals to illegally download these 30 songs "in protest" and to

---

[1]  As of August 14, 2009, it appeared that over 1,000 users had downloaded the torrent
and that there were over 700 seeders (i.e., people offering the recordings for further distribution).

share them with millions of other users.

In short, despite the verdict and a clear finding of willful copyright infringement

by Defendant, he continues to promote, indeed advertise, illegal online file-sharing of

Plaintiffs' copyrighted sound recordings—the very sound recordings for which a jury

found him liable for willful copyright infringement.  As such, a broad injunction

enjoining Defendant from engaging in continued online copyright infringement, or acting

in concert with others in committing copyright infringement, is necessary.

## ARGUMENT

**I.      THIS COURT SHOULD PERMANENTLY ENJOIN DEFENDANT FROM COMMITTING, OR ACTING IN CONCERT WITH OTHERS IN COMMITTING,  FUTURE INFRINGEMENT OF PLAINTIFFS' COPYRIGHTS.**

Plaintiffs respectfully submit that, in addition to a monetary judgment in the amount

found by the jury, they are entitled to a permanent injunction against Defendant.  The Copyright

Act provides:

> Any court having jurisdiction of a civil action arising under this
> title may . . . grant temporary and final injunctions on such terms
> as it may deem reasonable to prevent or restrain infringement of a
> copyright.

17 U.S.C. § 502(a)*; see also Universal City Studios Prods. LLLP & Paramount Pictures Corp.*

*v. Bigwood,* 441 F. Supp. 2d 185, 192 (D. Me. 2006) ("As a general rule, a permanent injunction

will be granted when liability has been established and there is a threat of continuing

violations."); *Elektra Entm't Group, Inc. v. Carter*, 618 F. Supp. 2d 89, 95 (D. Me. 2009) ("in

copyright actions '[c]ourts generally grant permanent injunctions where liability is clear and

there is a continuing threat to the copyright.'"); *Coquico, Inc. v. Rodriguez-Miranda*, 2007 U.S.

Dist. LEXIS 76570 (D.P.R. Oct. 11, 2007) ("Because injury normally can be presumed, the

plaintiff in a copyright case is entitled to a preliminary injunction even without a detailed

showing of irreparable harm if the plaintiff demonstrates probable success on the merits or a

*prima facie* case of infringement.).

> In the First Circuit:
>
> A plaintiff seeking a permanent injunction is traditionally required to satisfy a four-factor test:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 112 (1st Cir. 2008) (citing *eBay, Inc. v. MercExchange,*

*L.L.C.*, 547 U.S. 388, 391 (2006) and applying it in granting a permanent injunction to a DMCA

action against a seller of cable filters to block pay-per-view signals).[2]  As the First Circuit

explained in *CoxCom*, however, "The first two of the four factors are satisfied on a showing of

'substantial injury that is not accurately measurable or adequately compensable by monetary

damages.'"  *Id.*  The Court explained:

> A cable box outfitted with a filter could prevent up to $300 in pay-per-view charges from reaching CoxCom, a substantial injury given the appellants allegedly sold thousands of filters.  That injury is also difficult to accurately measure.

*Id.*

---

[2] Plaintiffs note that the First Circuit has stated both in *CoxCom* and in *United States v. Mass. Water Res. Auth.*, 256 F.3d 36, 51 n.5 (1st Cir. 2001), that it may not be necessary to satisfy the four-factor *eBay* test in cases where Congress has specifically authorized injunctive relief. However, since the standard is easily met in this case, Plaintiffs will analyze this case within the *eBay* factors.  Plaintiffs do not concede that the factors apply where, as in this case, the Copyright Act specifically authorizes injunctive relief.  *See CoxCom,* 536 F.3d at 112 n. 14 ("we note that where Congress has specifically authorized injunctive relief, as is the case with Section 553 and the DMCA, it may not be necessary to satisfy the four-factor test."); *Mass Water Res. Auth.,* 256 F.3d at 51 n.5 ("At least with respect to some statutory injunction provisions . . . when Congress decides to make available the remedy of injunction for violations of a statute's substantive provisions, irreparable injury is presumed to flow from such violations.").

#1424679 v1 den

Moreover, once infringement has been established, irreparable harm is presumed in copyright infringement actions. *See, e.g.*, *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir. 1988); *Warner Bros. Entm't Inc. v. RDR Books,* 575 F. Supp. 2d 513 (S.D.N.Y. 2008) (applying *eBay* and finding that "irreparable injury may generally be presumed "when a copyright plaintiff makes a *prima facie* showing of infringement"); *UMG Recordings, Inc. v. Blake,* 2007 U.S. Dist. LEXIS 46414 (E.D.N.C. June 26, 2007) (applying the four *eBay* factors and finding that "irreparable injury is presumed when a plaintiff succeeds on the merits. . . . Consequently, plaintiffs need not show irreparable harm."); *Carter,* 618 F. Supp. 2d at 95 ("in copyright actions courts generally grant permanent injunctions where liability is clear and there is a continuing threat to the copyright.") (internal citations omitted); *Asociacion De Industriales De P.R. v. MarketNext, Inc.*, 2009 U.S. Dist. LEXIS 24134 (D.P.R. Mar. 23, 2009) ("[T]rademark infringements may be presumed without more to cause irreparable harm."); *Commerce Bank & Trust Co. v. TD Banknorth, Inc.*, 554 F. Supp. 2d 77, 87 (D. Mass. 2008) ("In the context of trademark litigation, irreparable harm is generally presumed if a plaintiff demonstrates a likelihood of success on the merits."); *Coquico*, 2007 U.S. Dist. LEXIS 76570 (applying the four factors and holding that "Because injury normally can be presumed, the plaintiff in a copyright case is entitled to a preliminary injunction even without a detailed showing of irreparable harm if the plaintiff demonstrates probable success on the merits or a *prima facie* case of infringement.")

In this case, through continued online copyright infringement, Defendant has downloaded thousands of Plaintiffs' copyrighted recordings and distributed them to millions of like-minded infringers through peer-to-peer networks. Moreover, his admissions at trial that he continued to infringe long after repeated warning, indeed, long after this litigation was filed, and his

#1424679 v1 den

promotion of online copyright infringement post-verdict, demonstrates a disdain for copyright and a strong likelihood of continued infringement.  Moreover, Defendant's admission at trial that he lied to Plaintiffs, and to this Court, on numerous occasions throughout this litigation makes any claim that he has ceased his infringement suspect.

With respect to the second factor, as with *CoxCom*, the injury to Plaintiffs is difficult if not impossible to accurately measure.  *Id. See, Warner Bros. Records, Inc. v. Payne,* 2006 U.S. Dist. LEXIS 65765, *10 (W.D. Tex. 2006); *Universal City Studios v. Reimerdes*, 111 F. Supp.2d 294, 344 (S.D.N.Y. 2000) ("[D]ifficulties [in calculating damages in copyright cases] have led to the presumption that copyright and trademark infringement cause irreparable injury, i.e. injury for which damages are not an adequate remedy."); *Sony BMG Music Entm't v. Gray,*  2008 U.S. Dist. LEXIS 70128, *10 (N.D. Cal. Sept. 15, 2008) (analyzing the *eBay* factors and granting permanent injunction, finding monetary damages inadequate in a P2P file-sharing case because "damages for violations of these kinds of rights are inherently difficult to value.").  In fact, this is the reason for statutory damages in the Copyright Act.  *Marvin Music Co. v. BHC Ltd. Partnership*, 830 F. Supp. 651, 656 (D. Mass. 1993); *Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1295 (D.R.I. 1982).  Thus, Plaintiffs respectfully submit that an injunction in this case "is not only warranted but required."  *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1027 (9th Cir. 2001).

The third factor also supports entry of an injunction because, as with *CoxCom¸* the balance of the hardships, "clearly tilts in favor of granting the injunction because the hardship to [Tenenbaum] in being unable to possess, sell, or distribute [copyrighted sound recordings] is slight."  *Id.*  There can be no harm from being enjoined from doing something that is clearly against the law and for which Defendant has already been found liable.  The injunction sought by

Plaintiffs does not prevent Defendant from doing anything he is lawfully allowed to do with legitimately obtained sound recordings.  In contrast, failure to issue the requested injunction may result in substantial harm to Plaintiffs.  *See Gray*, 2008 U.S. Dist. LEXIS 70128 at *10 ("While the magnitude of harm that internet file sharing potentially could create is great and difficult to quantify, the risk of harm to defendant that would be created by issuance of the injunction is small.")  Given Defendant's repeated lies and continued infringement, it is likely Defendant will continue to infringe and/or act in concert with others in committing online copyright infringement of Plaintiffs' sound recordings, especially given that he is currently promoting the online copyright infringement by countless others.  As the Court explained in *Blake*, 2007 U.S. Dist. LEXIS at **7-8:

> As to the consideration of the balance of hardship between Plaintiffs and Defendant, the fact that Plaintiffs' recordings can be replicated into infinity, for free, establishes that a distinct hardship rests with Plaintiffs.  Defendant, on the other hand, faces little, if any, harm.  These recordings will still be just as accessible to Defendant; (s)he will have to pay to download them."

Finally, the fourth factor, the public interest, "further supports the issuance of the injunction:  the public has an interest in the enforcement of federal statements."  *Id.*  As the First Circuit explained in *Concrete Machinery Co.* , 843 F.2d at 612, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections."  *Coquico, Inc.*, 2007 U.S. Dist. LEXIS 76570, #16 ("The public interest rarely is a genuine issue if the copyright owner has established a likelihood of success since the public interest is generally served by upholding copyrights and preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.").  Similarly, the entry of an injunction is "necessary to preserve the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights."  *Atari, Inc. v. N. Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 620 (7th Cir. 1982) (preliminary injunction).

#1424679 v1 den

Here, the ease, scope, and history of Defendant's infringement warrant the requested injunction. Defendant's infringements were widespread and continuous. He downloaded and distributed thousands of sound recordings, including the 30 copyrighted sound recordings that the jury found he willfully infringed (Doc. No. 991). Furthermore, the evidence established that Defendant was distributing thousands of sound recordings using multiple P2P platforms and continued to do so for years—after being repeatedly told to stop, and well after this litigation began. The nature of Defendant's means of infringement—multiple peer-to-peer file sharing networks with tens of millions of potential users—has resulted in the distribution of Plaintiffs' copyrighted sound recordings to innumerable other people, who, in turn, are likely to further distribute Plaintiffs' sound recordings to others. *See MGM Studios, Inc. v. Grokster, Ltd.*, 259 F. Supp.2d 1029, 1032-33 (C.D. Cal. 2003). The extent of the viral, or exponential, infringement set in motion by Defendant is literally incalculable. *Reimerdes*, 111 F. Supp. 2d at 331-32 (the distribution of digital works via the Internet "is exponential rather than linear," and "threatens to produce virtually unstoppable infringement of copyright."). Moreover, his continued infringement, admitted at trial to have continued well after the this litigation began, as well as through megauploads, and his continued promotion of online piracy, even after the verdict in this case, demonstrates continued disdain for the copyright laws and that, absent an injunction, his infringement will likely continue into the future.

"There is a considerable body of authority that permanent injunctions may extend to future works upon a showing of a threat of future infringements." *Carter*, 618 F. Supp.2d at 95 (citing extensive cases and granting a permanent injunction in a similar filesharing case, explained that, "Considering the possibility that future activity on a peer-to-peer network may lead to exponential infringement and the fact that the ten works for which Mr. Carter is being

10

held liable represent only a fraction of his file-sharing activity, the Court grants Plaintiffs' request

for a permanent injunction."). *See Princeton Univ. Press v. Michigan Document Servs.,* 99 F.3d

1381, 1392 (6th Cir. Mich. 1996) ("The weight of authority supports the extension of injunctive

relief to future works."); *Olan Mills Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. Iowa

1994) (adopting from *Walt Disney Co. v. Powell*, 283 U.S. App. D.C. 111, 897 F.2d 565, 568

(D.C. Cir. 1990) that "where . . . liability has been determined adversely to the infringer, there

has been a history of continuing infringement and a significant threat of future infringement

remains, it is appropriate to permanently enjoin the future infringement of works owned by the

plaintiff but not in suit."). Additionally, pursuant to the equitable powers provided under

17 U.S.C. § 503(b), this Court has the power to order the destruction of all infringing copies in

Defendant's possession as part of a final order or decree. *See Rogers v. Koons*, 960 F.2d 301,

313 (2d Cir. 1992).

Furthermore, the fact that Defendant moved from platform to platform for almost a

decade in search of "the maximum amount of music sharing for the minimum amount of wasted

effort" and has continued to promote piracy throughout this litigation, mandates a strong

injunction prohibiting him not only from continued infringement and destroying the infringing

sound recordings that he admitted at trial he never destroyed, but from promoting online piracy.

In the countless interviews Defendant has given, he has never once stated that he regretted his

copyright infringement or expressed any contrition. To the contrary, he has promoted continued

piracy of these very songs through his website, "*Joelfightsback*." Absent an injunction, there is

nothing to stop Defendant from downloading and distributing more of Plaintiffs' copyrighted

sound recordings through an online media distribution system and continuing to spend his "15

minutes of fame" promoting viral copyright infringement. Injunctive relief therefore is required

#1424679 v1 den

to prevent further irreparable harm.  Accordingly, Plaintiffs seek entry of an injunction, as requested in the Complaint, with additional language enjoining Defendant from acting in concert with others in committing copyright infringement.  (*See* Compl. ¶ 19.)

In this case, a further injunction is needed to prevent Defendant from using his notoriety as a Defendant in this case to promote continued piracy and online copyright infringement, such as the advertising of The Pirate Bay torrents he is currently promoting.  Without such language, Defendant will continue to inflict irreparable harm on the Record Company Plaintiffs by encouraging others sympathetic to Defendant from rampant and viral infringement of the very works at issue.

**II.    THIS COURT SHOULD ENTER THE MONETARY JUDGMENT AWARDED BY THE JURY ON JULY 31, 2009**

A jury awarded a total of $675,000 against Defendant for willfully infringing Plaintiffs' copyrights in 30 sound recordings.  Plaintiffs request judgment for this amount.

**CONCLUSION**

For all of these reasons, Plaintiffs respectfully request that this Court enter Judgment in this case to include a monetary judgment in accordance with the jury's verdict, and injunctive relief, as requested in the proposed order attached hereto as **Exhibit B** for the Court's convenience.

12

Respectfully submitted this 1st day of September, 2009.

SONY BMG MUSIC ENTERTAINMENT;
WARNER BROS. RECORDS INC.;
ATLANTIC RECORDING CORPORATION;
ARISTA RECORDS LLC; and UMG
RECORDINGS, INC.

By their attorneys,

By:    s/ Eve G. Burton
Timothy M. Reynolds (*pro hac vice*)
Eve G. Burton (*pro hac vice*)
Laurie J. Rust (*pro hac vice*)
HOLME ROBERTS & OWEN LLP
1700 Lincoln, Suite 4100
Denver, Colorado 80203
Telephone: (303) 861-7000
Facsimile: (303) 866-0200
Email:  timothy.reynolds@hro.com
           eve.burton@hro.com
           laurie.rust@hro.com

Matthew J. Oppenheim (*pro hac vice*)
THE OPPENHEIM GROUP, LLP
7304 River Falls Drive
Potomac, MD 20854
Telephone (301) 299-4986
Facsimile:  (866) 766-1678
Email:  matt@oppenheimgroup.net

Daniel J. Cloherty
DWYER & COLLORA, LLP
600 Atlantic Avenue - 12th Floor
Boston, MA 02210-2211
Telephone:  (617) 371-1000
Facsimile:  (617) 371-1037
dcloherty@dwyercollora.com

ATTORNEYS FOR PLAINTIFFS

13

#1424679 v1 den

14

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on September 1,

2009.

s/Eve G. Burton

#1424679 v1 den